Baumgartner *v.* Hasty.

Filed March 12, 1885.

---

No. 11,704.

BAUMGARTNER *v.* HASTY.

MUNICIPAL CORPORATIONS. — *Nuisance.* — *Wooden Buildings.* — A wooden building is not in itself a nuisance, but it may become so when it endangers surrounding buildings, and a municipal corporation may enact, an ordinance providing for the summary removal of such a building.

SAME.—*Ordinance.*—*Fire Limits.*—A municipal corporation has power to prescribe fire limits, and to prevent the erection of wooden buildings within the prescribed limits.

SAME.—*Public Nuisance.*—A public nuisance may be summarily abated without notice to the owner of the thing which constitutes the nuisance, provided no unnecessary damage is done to the property.

SAME.—*Legislative Power.*—The Legislature has power to invest municipal corporations with authority to abate public nuisances without resorting to judicial proceedings.

SAME.—*Forfeiture of Property.*—A municipal corporation has no power to forfeit the property of a citizen, but the abatement of a public nuisance by the tearing down of a wooden building which constitutes a nuisance is not a forfeiture of property.

SAME.—*Inhabitants Compose Corporation.*—The inhabitants of the territory embraced within the corporate limits, and not the officers, constitute the corporation.

CONSTITUTIONAL LAW.—*City.*—*Ordinances.*—The provisions of the constitution respecting the titles of statutes do not apply to the ordinances of municipal corporations.

SAME.—*Incorporation of Prior Ordinance by Reference.*—A prior ordinance may be incorporated in a subsequent ordinance and carried forward by appropriate language.

From the Huntington Circuit Court.

*B. F. Ibach* and *L. P. Boyle,* for appellant.
*J. B. Kenner* and *J. I. Dille,* for appellee.

ELLIOTT, J.—The controlling question in this case arises upon the ruling on the demurrer to the appellant's answer. The appellee's complaint charges that the appellant wrongfully and maliciously destroyed a covering erected over an ice box on the premises of the appellee. The appellant answered by way of justification, alleging that he was the marshal of the city of Huntington; that the appellee was the owner of a lot in that city; that the lot was situated in a part of the city in which the common council had by ordinances prohibited the erection of wooden buildings; that the appellee, in violation of the provisions of the ordinances, did erect a frame building on the lot; that he was requested to remove the building, and refused to do so, whereupon the appellant notified the mayor, in accordance with the provisions of the ordinance, and that officer issued to him a warrant, commanding him to remove the building, and acting under this warrant, he did remove it, using all proper care and doing no unnecessary damage. It is also alleged that the appellant acted without malice in removing the building; that the removal was necessary, because the building was erected in such close proximity to other buildings as to greatly endanger their safety, and that the danger so created was an imminent one.

Two ordinances of the city, duly enacted and published, are set forth. These ordinances contain provisions making it unlawful to erect wooden buildings within the prescribed limits, imposing upon the marshal the duty of notifying the mayor of a violation of the ordinance, and providing that the mayor, upon the report of the marshal, shall issue his warrant to take down and remove the building.

A wooden building is not in itself a nuisance, but when erected in a place prohibited by law, and where it endangers the safety of adjoining property, it may become a nuisance. If the locality and character of such a building do endanger the safety of surrounding buildings, then it may be treated as a nuisance, and a governmental body, having authority to legislate upon such subjects, may prohibit its erection in places

where it would endanger the safety of surrounding property. There are many things that are not nuisances *per se,* but which become such when placed in locations forbidden by law, and where they essentially interfere with the enjoyment of life or property. In a work of excellent standing it is said: "While a man has a right to follow his own tastes and inclinations as to the style and character of the building that he will erect upon his own land, yet he has no right to erect and maintain there a building that is dangerous, by reason of the materials used in, or the manner of its construction, or that is inherently weak or in a ruinous condition and liable to fall and do injury to an adjoining owner or the public. Such a building on a public street is a public nuisance, and is a private nuisance to those owning property adjoining it." Wood's Law of Nuisance, section 109. It must rest with the governmental authorities of the locality to determine in what places wooden buildings shall not be erected, for courts can not exercise legislative functions in such matters. For the courts to undertake to prescribe in what localities in towns and cities wooden buildings shall be erected, would be to usurp governmental powers which are delegated to the local authorities. It would be to take upon themselves the government of municipal corporations, and this no one will assert they have any right to do. Where, therefore, a valid municipal ordinance prohibits the location of wooden buildings within certain limits, and it appears, as it does here, that the building is located within the prohibited district, and endangers the safety of surrounding property, it may properly be treated as a public nuisance, and as such abated. We are not unmindful of the rule that a municipal corporation has no power to treat a thing as a nuisance which can not be one; but while we recognize this rule, we also recognize the equally well settled rule that it has the power to treat as a nuisance a thing that from its character, location and surroundings, may, and does, become such. In discussing this general subject it was said, in a recent case: "But in

doubtful cases, where a thing may or may not be a nuisance,. depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power like the one we are considering, their action, under such circumstances, would be conclusive of the question." *North Chicago City R. W. Co.* v. *Town of Lake View,* 105 Ill. 207; S. C., 44 Am. R. 788.   The chancellor, in the course of a discussion of the question in the famous case of *Hart* v. *Mayor, etc.,* 3 Paige, 213, said: " It therefore becomes necessary, in all populous towns and crowded harbors, to regulate such matters by police ordinances.   And public policy requires that the corporation of the place, or conservators of the port, should not be disturbed in the exercise of those powers, unless they have clearly transcended their authority." Speaking upon the same subject, another court has said: " The proper exercise of the police power and the efficient preservation of the public health could hardly be accomplished, if every individual or any set of individuals can determine what is properly to be regarded as a nuisance and what are measures of salubrity.   The various tastes and habits and the conflicting hygienic theories of different persons would, if it were necessary to be guided by them, prevent the municipal authorities from adopting any fixed and certain plan. It is, therefore, right and proper that they should be vested with the authority to decide what comes within the ' legal notion ' in that regard." *Mayor, etc.,* v. *Gerspach,* 33 La. An. 1011.   But we have not time to make further extracts from the adjudged cases, but content ourselves with referring to some of the many cases in which similar declarations are made: *Baker* v. *City of Boston,* 12 Pick. 184; *First Municipality* v. *Blineau,* 3 La. An. 689; *Kennedy* v. *Phelps,* 10 La. An. 227; *Mayor, etc.,* v. *Hoffman,* 29 La. An. 651.

Our statute grants very comprehensive powers to municipal corporations respecting the abatement of nuisances, and

if a wooden structure, erected in a place where it endangers surrounding property, can be regarded as a nuisance, there can be no question as to the right of the municipal corporation to cause its removal. But it is settled, without dissent, that without a special grant of authority public corporations may, as a common law power, cause the abatement of nuisances, and if the nuisance can not otherwise be abated, may destroy the thing which constitutes it. The authorities do, indeed, go much further, for they declare that it is the duty of the corporation to abate public nuisances. It is one of the oldest of the common law rules, that an individual citizen may, without notice, abate a nuisance, and, if it is necessary to effectually abate it, destroy the thing which creates it. Of the authorities sustaining this doctrine we cite only a few: *Lodie* v. *Arnold*, 2 Salk. 458; *Hart* v. *Mayor, etc.*, 9 Wend. 571; S. C., 24 Am. Dec. 165; Viner Abridg. Title Nuisance; 1 Hawkins P. C., chap. 32, s. 12; 3 Black. Com. 5; Broom Com. 222; Cooley Torts, 46; *Northrop* v. *Burrows*, 10 Abbott Pr. 365; *Jones* v. *Williams*, 11 M. & W. 176; *Lanfear* v. *Mayor, etc.*, 4 La. 97; S. C., 23 Am. Dec. 477; *Harvey* v. *De Woody*, 18 Ark. 252; *Ferguson* v. *City of Selma*, 43 Ala. 398; *People* v. *Vanderbilt*, 28 N. Y. 396; *State* v. *Flannagan*, 67 Ind. 140; *City of Indianapolis* v. *Miller*, 27 Ind. 394; *Grove* v. *City of Fort Wayne*, 45 Ind. 429 (15 Am. R. 262).

These authorities, running back as they do into the early years of the common law, and extending in an unbroken line to the present time, prove that not only may a governmental corporation abate a nuisance by the destruction of the thing constituting it, but so, also, may a private individual. It is, therefore, not the delegation of a new or an extraordinary power to authorize municipal corporations to abate nuisances by removing or destroying the thing which creates it. A man has no right to build a wooden house in a place prohibited by law, and thus endanger the safety of the person or property of others. He has neither a legal nor a moral right to do an

illegal act on his own premises, which puts in jeopardy the person or property of another.    There can be no acquisition of a right by the performance of an illegal act.    In removing a building erected in violation of law, and in a situation where it imperils person or property, no private right is invaded, because none could grow out of the illegal act.

There is some conflict in the authorities as to whether a municipal corporation possesses the inherent power to prohibit the erection of wooden buildings within prescribed limits and to cause their removal.    Judge Dillon's opinion is that the power does inhere in all municipal corporations, for we find him writing that cities may, " where this is consistent with the general and special legislation applicable to the municipality, establish fire limits, and prevent erection therein of wooden buildings."    1 Dillon's Municipal Corp., 3d ed., sec. 405.    The Supreme Court of Michigan, in speaking of ordinances similar to those here under examination, said : " Of the power of the common council to pass the ordinances in question, we have no doubt.    They contravene no provision of the constitution as we read it, and they were made in the exercise of a police power necessary to the safety of the city."    *Brady* v. *Northwestern Ins. Co.*, 11 Mich. 425.    There are other cases sustaining this view.    *Wadleigh* v. *Gilman*, 12 Me. 403 ; *Mayor, etc.*, v. *Hoffman*, 29 La. An. 651.    These cases rest on solid principle, for the rule has always been that a municipal corporation has the inherent power to enact ordinances for the protection of the property of its citizens against fire.    2 Bacon's Abridg. 147 ; *Clark* v. *City of South Bend*, 85 Ind. 276 ; S. C., 44 Am. R. 13 ; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659, see p. 669 ; 2 Kent Com. 339.    The exercise of such a power is not the exercise of a new power, nor of one not connected with the purposes for which public corporations are organized ; on the contrary, it is the exercise of a power long possessed by municipal corporations and closely connected with the purposes for which such corporations are organized.    In speaking of ordinances much the same as those here under discussion, it

was said in *Mayor, etc.,* v. *Hoffman, supra,* "No town or city, compactly built, can be said to be well ordered or well regulated which neglects precautions of this sort. It is its duty to the public to take such measures as may be practicable to lessen the hazard and danger of fire." A legislative act granting authority to take precautions against fire, and ordinances passed under such an act authorizing the removal of wooden structures erected within forbidden limits, are little more than express declarations of the existence of powers which existed at common law, and are necessarily implied in the grant of a charter to a city.

There are very many provisions in the general act for the incorporation of cities conferring authority upon the common council of cities to enact ordinances to secure protection against fire, and these provisions taken, as they must be, as parts of one uniform system, leave no doubt in our minds that the Legislature meant to invest cities with authority to enact such ordinances as were reasonably necessary to prevent the destruction of property by fire. In the enumeration of the powers of the common council, there is an express grant of power, and when this provision is read in connection with the other provisions of the act, it is very clear that the whole power of enacting ordinances upon the subject is vested in the common council. It is quite certain that the common council is the only branch of municipal government invested with legislative functions, and it would be unreasonable to hold that any other than the legislative body could enact ordinances.

There is little, if any, conflict in the decisions upon the question of the validity of ordinances passed under express legislative authority fixing limits within which wooden buildings shall not be erected; the conflict among the cases is upon the question whether the municipal corporation possesses the power to enact such ordinances without express legislative authority. Even in Pennsylvania, where a narrow view is taken of the general subject, such ordinances have been sustained,

and in a recent case it was said: " It is true that a wooden building, though erected contrary to law, is not *per se* a public nuisance. But it may become such by the manner in which it is used or allowed to be used." At another place, in the same opinion, it was said, in speaking of the buildings of the plaintiff: " The city of Philadelphia was the owner of large and valuable property in their neighborhood. Any hour of the day or night they were in danger of being set on fire by those who frequented them with the owner's permission. It is stated as a fact in the special plea, and of course a fact admitted by the agreement, that the public safety was imperilled. Nothing more was necessary to justify the action of the defendant." *Fields* v. *Stokley*, 99 Pa. St. 306; S. C., 44 Am. R. 109.

In the case before us the answer avers, and the demurrer admits, that the location of the appellee's building was such as to put surrounding property in imminent danger, so that the case falls fully within even the narrow rule of the Pennsylvania court. In the early case of *Respublica* v. *Duquet*, 2 Yeates, 493, the Legislature authorized the municipal corporation to prevent the erection of wooden buildings, and an ordinance enacted pursuant to this law was held valid. The subject received very full consideration in *King* v. *Davenport*, 98 Ill. 305 (38 Am. R. 89), and it was held that an ordinance providing for the summary destruction of a wooden building erected within forbidden territory was valid. In the course of the opinion it was said : " There can be no doubt, it seems to us, that the ordinance in question was a police regulation, proper, and made in good faith, ' for the purpose of guarding against the calamities of fire' in a populous neighborhood; and we must regard it as an entirely reasonable regulation. There is no more frequent or admittedly proper exercise of the police power, than that of the prohibition of the erection of buildings of combustible materials in the populous part of a town, and the only means of making such prohibition effectual is by a summary abatement. Every moment's delay in the

Baumgartner *v.* Hasty.

removal of the nuisance is constant exposure to danger. Before any judicial hearing could be had in the matter, the whole evil sought to be guarded against might be produced." It was also held in that case, that the erection of a wooden building in a forbidden place created a nuisance, which might be summarily abated, the court saying: " But what is a nuisance at common law ? Blackstone's definition is, whatsoever unlawfully annoys or doth damage to another, is a nuisance."

We can not take time to quote further from the adjudged cases upon this phase of the case, but content ourselves with referring to the reasoning in the cases already referred to upon another feature of the case, and to the cases of *Corporation of Knoxville* v. *Bird,* 12 Lea (Tenn.) 121; *City of Salem* v. *Maynes,* 123 Mass. 372; *Field* v. *City of DesMoines,* 39 Iowa, 575; S. C., 18 Am. R. 46.

The case principally relied upon by the appellee is that of *Kneedler* v. *Borough of Norristown,* 100 Pa. St. 368; S. C., 45 Am. R. 383. That case concedes that where the Legislature authorizes the municipal corporation to enact ordinances such as those under examination, they are valid; so that, conceding it to be well decided, it does not sustain the judgment below.

The removal of a building, erected in defiance of law in a place where it endangers surrounding buildings, is not the forfeiture of property ; it is the exercise of a police power, and is not a declaration of forfeiture. The removal of the building, or its demolition, may cause loss to the owner, but there is no forfeiture of it to the public, or to any one else. We have seen that the rule has been for hundreds of years, that property may be destroyed if it creates a public nuisance in cases where the nuisance can not be effectually abated in any other way. A striking illustration of this general doctrine is found in the case of *Meeker* v. *VanRensselaer,* 15 Wend. 397, where it was held lawful for an officer acting under a board of health to tear down a tenement house cut up into small apartments, and calculated to breed disease. There are cases

by the scores in the books affirming the general doctrine, and we suppose that until the decision in *Kneedler* v. *Borough of Norristown, supra,* no one thought of treating the destruction of property constituting a nuisance as a forfeiture. Certainly, individuals have no right to pronounce forfeitures, and yet they may destroy property when necessary for the abatement of a public nuisance. It is inconceivable, therefore, that the act of removing or destroying a building to prevent the hazard of fire can be regarded as constituting a forfeiture. The real ground upon which the right rests is that stated in *Field* v. *City of DesMoines, supra,* where MILLER, C. J., in delivering the opinion of the court, said: " That any person may ' raze houses to the ground to prevent the spreading of a conflagration,' " without incurring any liability to the owner of the houses destroyed, is a doctrine well established in the common law. The maxim of the law is that " a private mischief is to be endured rather than a public inconvenience." 2 Kent Com. 338. Lord Coke says: " For the commonwealth a man shall suffer damage; as to the saving of a city or town, a house shall be plucked down if the next be on fire. This every man may do without being liable to an action." The general principle which authorizes the destruction of buildings to stay the progress of a conflagration, unquestionably authorizes the enactment of laws for the prevention of danger from fire. The question is much less doubtful in a case like this, where the building is constructed in defiance of law, than in a case where the building was lawfully erected, and its destruction made necessary by subsequent events. The general question here involved was discussed in the celebrated *Slaughter-House Cases,* 16 Wall. 36, where many instructive cases are gathered together, and it needs no extended discussion from us. The point which is here the decisive one was admirably discussed by the court in *Vanderbilt* v. *Adams,* 7 Cowen, 349, and from that decision we take this forcible statement of the conclusion reached after a review of the cases: " The owner of a lot in a city intends to build of wood; the

constituted authorities say, ' You must not exercise that right; it is dangerous to all. You may build of brick or stone; because the safety of all is, in this way, promoted.' Can the owner, with impunity, violate such a law, because he has the absolute right of property? It has not been heretofore so considered."

A municipal corporation is composed of the inhabitants of the territory over which its limits extend, and not of the officers. It is an instrumentality of local government, and every voter is a participant in the governmental affairs of the corporation. There, as elsewhere in free governments, the majority rule, and the officers elected are the representatives of the citizens, and their official acts are the expressions of the public will. *Strosser* v. *City of Fort Wayne, ante,* p. 443; *City of Valparaiso* v. *Gardner,* 97 Ind. 1 (49 Am. R. 416); 1 Dillon Mun. Corp. (3d ed.), section 40. It is, therefore, the citizens themselves who fix the limits within which the erection of wooden buildings shall be prohibited, and if there is any fear of oppression, that fear must be that the people invested with the right of local government will oppress themselves, for the power is in their own hands. But it is not oppressive for the majority of the corporators, acting through their representatives, to prescribe fire limits. The citizen who denies that right is the one who manifests a spirit of oppression, for he would, if he could, sacrifice the public safety to his selfish interests. It is more just and more expedient, that the will of the majority of the citizens, lawfully expressed, should govern, than that one man should rule because it promotes his private interest.

The constitutional provisions respecting the titles of acts of the General Assembly, and like matters, do not apply to the by-laws of municipal corporations. *Green* v. *City of Indianapolis,* 25 Ind. 490.

The first ordinance defining the fire limits was passed on the 31st day of January, 1880, and by an ordinance adopted in March, 1881, it was ordained that in addition to the territory included within the fire limits prescribed by the former ordinance, it should be unlawful to erect a wooden building

within the territory added to the limits by the last ordinance. In the later ordinance is the following provision: "And all the provisions of an ordinance passed on the 31st day of January, 1880, by the common council of the city of Huntington, and any provisions thereof, shall be extended over and apply to the territory included in this ordinance." We have no doubt as to the validity of both these ordinances, and that the clause of the last ordinance does bring the territory described in it within the provisions of the earlier. The effect of the language employed is to enact that the provisions of the earlier ordinance shall be extended to new territory. We have in our statutes scores of instances in which legislation of the same general character was adopted in substantially the same method. It has, indeed, been held in several cases that a statute may be carried forward by reference to the general subject. *Opp* v. *TenEyck*, 99 Ind. 345, and cases cited. If the Legislature of a State were required to embody every act referred to in the act making the reference, it would soon be true that " of making many books there is no end."

Judgment reversed, with instructions to overrule the demurrer to the answer, and to proceed in accordance with this opinion.

Filed March 13, 1885.