# GRACE E. D. SPRIGG AND JAMES C. SPRIGG, JR., HER HUSBAND, *vs.* GARRETT PARK ET. AL.

*Police Power—Public Health—Prohibition of Cesspools in Towns—Summary Abatement of Nuisance.*

The Act of 1898, ch. 453, incorporating the town of Garrett Park, provided that the corporation should have " full power to regulate privies, specify the character of boxes and other fixtures for them, and the mode in which they shall be emptied and their contents removed, as well as the disposition of said contents, and they shall prohibit the construction or maintenance of privy-sinks, cesspools and other depositories of filth within the corporate limits." The town council passed an ordinance directing the use of water-tight dry earth-boxes for these purposes, and prohibited the use or construction of any cesspool or privy-sink, and directed that such cesspools should be removed by the health officer upon the order of the council. Before the passage of the Act, the plaintiff had constructed a water-tight cesspool on his premises within the town limits, and upon his refusal to cease the use thereof, the health officer of the town, in pursuance of orders from the town council, severed the pipes connecting the cesspool with plaintiff's house and removed a part of them. Upon a bill for an injunction, *Held*,

1st. That the charter of the town and the ordinance passed in pursuance thereof was a valid exercise of the police power designed in good faith to protect the public health, and that plaintiff had no vested right to continue the use of the cesspool.

2nd. That the ordinance did not operate to deprive plaintiff of his property without due process of law within the constitutional inhibition.

3rd. That it was not necessary to give to plaintiff notice of the passage of the ordinance, or of the order directing the health officer to sever plaintiff's pipes, and that the town has the right to proceed to a summary abatement of the nuisance without a judicial proceeding.

Appeal from an order of the Circuit Court for Montgomery County (HENDERSON, J.), dissolving an injunction.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, and SCHMUCKER, JJ.

*Andrew Wilson* and *R. B. B. Chew, Jr.* (with whom was *Noel W. Barksdale* on the brief), for the appellants.

*Philip D. Laird* (with whom was *Robert B. Peter* on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

The bill sets forth that Grace E. Sprigg, in making certain alterations and improvements on her lot situated in the town of Garrett Park, had constructed, at large expense, a vault for the reception of excrement and other waste matter ; that the structure "was constructed with the greatest care, of the very best material, and by skilled workmen ;" that the method is the best known to, and adopted by, leading authorities on sanitation, for the disposal of waste matter in suburban residences, and " greatly superior to the use and maintenance of the old-fashioned box privy ;" and that it is " so constructed that no stenches, odors, gases or foul vapor can escape, and no waters or liquids of any kind can leak through its walls of masonry." It is further alleged that the council of Garrett Park, on the 27th day of May, passed an order directing the complainant to " suppress or remove " the said structure, and in the event of her failure so to do, the health officer was directed to suppress the same ; that later on the council, by its officers, entered upon the premises, and destroyed the pipes leading from the dwelling-house to the vault, so as to render the latter useless. The complainants charge that such acts on the part of the council are "illegal, unconstitutional and unjust," and therefore pray that it may be enjoined from further molesting the vault or its connections, and from further interfering with them, in the use, enjoyment and reparation thereof. They also pray that so much of the charter of the town and the ordinances under which it has acted, " as relates to these complainants and the use of their property, be declared unconstitutional, null and void."

The respondent admits having disconnected the appellants' pipe leading from the dwelling to the vault, but claims it had power so to do under and in accordance with the provisions of the charter of Garrett Park and of ordinances

passed in pursuance thereof.    It also avers that the vault, as constructed, is unsafe and insufficient for the purposes for which it was made, and is a menace to the health and comfort of the community.    A large amount of evidence was taken, much of which, relating to the plan of the vault, the material used, and the details of its construction, it will not be necessary to refer to in detail.    The following facts seem to be either conceded or to be established by the proof.    The appellant, Grace Sprigg, became the owner of the lot, in the year eighteen hundred and ninety-seven. The alterations and improvements were begun in January following, and the vault was completed somewhere about the twentieth day of March.    The Act incorporating Garrett Park, being chapter 453 of the Acts of 1898, was approved on the seventh of April.    By the thirteenth section of this Act, power is conferred on the council to pass such ordinances " as may be necessary, beneficial and proper."

" 2. To maintain its cleanliness and health and to this end—

" (a) They shall have the same powers as the State Board of Health of this State within the corporate limits of said town, &c.    *    *    *

"(c) They shall have full power to regulate privies, specify the character of boxes and other fixtures for them, and the mode in which they shall be emptied and their contents removed, as well as the disposition of said contents, and they shall prohibit the construction or maintenance of privy-sinks, cesspools and other depositories of filth within the corporate limits :

"(d) They shall provide for the inspection and cleanliness of all privies, yards and stores.    *.    *

"(g) They shall pass such ordinances as they may deem necessary to preserve the health of the town, suppress and remove all nuisances, prevent the sale of adulterated or decayed food, and prohibit any and all business within the corporate limits as shall in their opinion injuriously affect the sanitary condition thereof, &c."

It is contended that the provisions of sub-division (*c*) are not " a constitutional and reasonable exercise of the police power possessed by the State with reference to the preservation of the public health." It is not insisted by the complainants that the power of the Legislature does not extend over police regulations for the protection of the comfort, health and morals of the community. Nor is it claimed by the solicitors for the defendant, that this power is not without its limitations, in that the regulations made, "must have reference to the comfort, safety and welfare of society and must not conflict with the provisions of the Constitution." *In re Jacobs*, 98 N. Y. 98 ; *Slaughter House cases*, 16 Wall. 36 ; *Cooley Const. Limitations*, 4th ed. 719.

The Supreme Court of the United States, in *Mugler* v. *Kansas City*, 123 U. S. 623 (L. Co. Op. 31, 210), said : " If a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the Courts to so adjudge and thereby give effect to the Constitution." These principles are well established by many adjudications and can be supported upon sound reasons of public policy. Now it cannot be questioned that the disposal of water-closet material and other waste matter, is a subject of the greatest importance, whereever many persons are collected in cities or towns. Scientific investigation has demonstrated that there can exist no more prolific source of disease, than may arise from the unsanitary disposition of such matter. Gases may arise from insufficiently protected receptacles and pollute the atmosphere, and deadly fluids permeating the soil, may fill it with elements dangerous in the highest degree to the health of human beings. For these reasons the most careful attention to the proper disposal of such matter is one of the most imperative of the duties that rest upon the municipal authorities, who are charged with the protection of the public health. The charter imposes upon the council of

Garrett Park the power and duty of passing such ordinances as may be appropriate and necessary for this purpose. By sub-division (*c*) it has been required of the council to maintain the cleanliness and health of the town by regulating privies and specifying the character of boxes, &c., and prohibiting the construction and maintenance of " sinks, cesspools and other depositories of filth." By the words "other depositories of filth," must be understood such " depositories " as are of the same nature as sinks or cesspools ; and we understand that to mean such as are constructed to hold the waste matter, solid and fluid, until they are emptied by natural causes (as by percolation through the soil, or by evaporation of the fluid matter), or by artificial means. It is clear the Legislature regarded such structures as a menace to the public health. It would be possible, without doubt, to construct a sink or vault that would retain the gases and fluids, but such a structure, as the proof in this case shows, requires a high degree of skill and care. To prevent the construction of imperfect vaults, from which both gas and fluid would escape, to the imminent peril of all persons residing in the vicinity, the Legislature has deemed it essential to the public welfare to prohibit the construction and maintenance of all sinks, cesspools or such depositories. By whom was it to be determined whether such arrangements would be dangerous to the public health ? There are many things shown in the proof that could be urged both for and against the contention that it is essential for the public safety to maintain the prohibition. The record is full of testimony, some of it conflicting in the highest degree, as to whether the vault of the complainants may not become speedily so impaired in strength as that both gas and fluid will leak through its masonry ; as to whether such vaults are the best arrangements for the disposal of waste ; or whether boxes with dry earth, are not more in accordance with the best principles of sanitary science. Who shall have power to decide such matters for the entire population of the town ? The power

must reside somewhere, so that all may be bound; else, as was said in *Mugler* v. *Kansas* (*supra*), "society will be at the mercy of the few, who, regarding their own appetites or passions only, may be willing to imperil the peace and security of the many, provided only they are permitted to do as they please." "Under our system," it is said in the same case, "that power is lodged with the legislative branch of the government. It belongs to that department to exert what is known as the police powers of the State, and to determine primarily what measures are appropriate or needful for the protection of the public morals, the public health or the public safety." In doing this, however, it cannot treat a thing as a nuisance which cannot be one, but it may declare that to be a nuisance, which, from its character, may and does become such. *Baumgardner* v. *Hasty,* 100 Ind. 575; *Inhabitants of Watertown* v. *Mayo,* 109 Mass. 697.

"Generally, it is for the Legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety, and while its measures are calculated, intended, convenient and appropriate to accomplish these ends, the exercise of its discretion is not subject to review by the Courts. But they must have some relations to these ends." *In the matter of Jacobs,* 98 N. Y. 98; *Tiedeman's Limitations of Police Powers,* secs. 122, 122*a*, 122*b*; *Town of Lake View* v. *Rose Hill Co.,* 70 Ill. 191; *Lawton* v. *Steele,* 152 U. S. 133, 144.

Nor can it be properly maintained that this sub-section of the charter is obnoxious to the provisions of the Constitution of the State or of the United States, having reference to the deprivation of property without due process of law. These were not intended to, and do not impose restraints upon the proper exercise of the police powers by the Legislatures of the several States. *New Orleans Gas Light Co.* v. *La. Light Co.,* 115 U. S. 650; *Singer* v. *State,* 72 Md. 466. We cannot find, therefore, that the statute is liable to any constitutional objections.

The ordinance under which the town council claims to act, being Ordinance No. 3, was passed on the 18th of May, 1898. By the first section, all premises within the corporate limits must be supplied with privies arranged with water-tight receptacles, wherein is to be used sufficient dry earth or ashes to absorb the fluid portions of the deposit, and no others of a different kind shall be constructed. By the second, it is provided, that no person shall construct or maintain " any cesspool, privy, sink or other depository of filth," except as provided by the first section ; a penalty for the violation of the ordinance is established, and it is made the duty of the health officer, " when directed by the council," to suppress or remove any cesspool, privy, sink or other depository of filth," not constructed in conformity with the requirements of the ordinance. The power of the council to pass this ordinance must be determined by the authority conferred upon them by the Legislature, either by express grant or by fair and reasonable intendment. *State* v. *Mott*, 61 Md. 303.

Tested by this rule it is difficult to perceive how or in what manner it is a departure from the power conferred upon the council by the Legislature. The substantial effect of the ordinance is to regulate privies in Garrett Park by specifying the character of the receptacles or boxes and the mode in which they shall be used, and to prohibit all other depositories of filth. This is a strict compliance with the requirements of the charter, and being such, there can arise no question as to its reasonableness. The council having done a plain duty, specifically imposed upon them by a valid enactment of the Legislature, the Courts have no power to set it aside or to declare it null and void. *Dillon on Mun. Corp.*, secs. 328–379.

Nor was the council under any obligation, before it was passed, to give notice to the parties to be affected of its pendency. *N. Y. Health Dept.* v. *Trinity Church*, 145 N. Y. 32 ; *State* v. *Miss, Pac. R. R. Co.*, 33 Kansas 176; *C. B. & Q. R. R. Co.* v. *Nebraska*, 170 U. S. 57.

On the twenty-seventh day of May the council directed
the health officer to serve a notice upon the complainants
to " suppress or remove " the depository of filth on or be-
fore the first day of June.    This having been done, the
health officer was ordered on the 2nd of June, " at once to
abate the nuisance created by the use of the vault," "by sev-
ering the connection between the same and the dwelling-
house, &c."    Accordingly, that officer performed the work
by severing the pipe and taking from it a section.    It thus
appears there has been no attempt to destroy the structure.
What was done and what the health officer was ordered to
do was to prevent its being maintained and used as a place
for the deposit of filth.    Unless the appellants can claim it as
a vested right to use the vault in an illegal manner, or in
other words can maintain the right to use the vault as a de-
pository of filth, the law to the contrary notwithstanding,
there can be no contention as to whether there was any in-
terference with his rights of property by the suppression of
the particular use.    Such a claim could not be made, be-
cause of the fact that the use was not illegal when the vault
was constructed.    In the case of the *Boston Beer Co.* v. *Mass-
achusetts*, 97 U. S. 25, the appellant was incorporated "for the
purpose of manufacturing malt liquors in all their varieties,"
and this right included the incidental right to dispose of the
liquors manufactured.    And it was contended that the police
power could not be so exercised as to deprive the corpora-
tion of any of the essential rights and privileges which the
charter conferred ; but it was held that this right cannot be
construed any greater or more sacred right than any citizen
had to manufacture, and that if the public safety required
the discontinuance of any manufacture or traffic, the hand
of the Legislature could not be stayed by any incidental
inconvenience which corporations or individuals may suffer.
*Massachusetts* v. *Roberts*, 16 L. R. A. 401 ; 155 Mass. 281.

There is no question in this case as to the retroactive
effect of the ordinance.    Mrs. Sprigg having failed to com-
ply with the notice of the 27th of May to cease the main-

tenance of the vault as a depository of filth, the health offi-
cer was ordered to prevent her from so using it by the re-
moval of the connection between the vault and the dwelling.
No attempt was made or proposed by the municipality or
by any of its officers or agents, to destroy the structure it-
self. For the purposes of this case it may be conceded that
the complainants have and can support a vested right to
maintain the structure. What is contested now, is whether
having such vested interests it may be used as a depository
of filth; that is, whether the complainants can maintain and
use it for purposes that are forbidden by the law. Here,
as was said in *Mugler's case (supra)*, " the fact to be ascer-
tained is, not whether a place kept and forbidden by the
statute is, *per se*, a nuisance—that fact being conclusively
determined by the statute itself—but whether the place in
question is so kept and maintained."

The only other matter that requires our attention, is as
to the power of the municipality to order, after notice to
the complainant, the summary abatement of the illegal use
by the severance of the connecting pipe. After all that
has been said, it follows, that the provisions of the charter
and of the ordinance, must be regarded as police regula-
tions, made in good faith for the purpose of protecting a
populous neighborhood against the encroachments of dis-
ease. If they are to become effective for the accomplish-
ment of the ends for which they were adopted, there must
be the power of prompt application. If it were held that a
judicial hearing must be had in every case, no matter how
open and notorious the infraction of the law was, in the
maintenance and improper use of privy-cesspools, sinks or
vaults, the law would become practically inoperative. The
municipality has had imposed upon it the care of the public
health, and to enable it to perform that duty efficiently it
has received the powers and privileges of the Health Offi-
cer of the State, with the right to remove nuisances. In
addition, it has been enjoined to prohibit cesspools, sinks
and such other receptacles of filth. It could never have

been intended by the Legislature, when it imposed such duties and conferred such powers, that it should be powerless to abate an unlawful use of a vault, a sink or a cesspool, until after a judicial hearing had been had.   There is no claim made in this case that the council may destroy the structure, in order to abate the unlawful use.   It may indeed be conceded that the structure having been built before the Act was passed, the complainant has a vested right to maintain it.   This, however, we are not called upon now to decide, and we must be understood as expressing no opinion here upon such a question.   But even if it be a legal structure, the complainant cannot put it to an illegal use; and if it be so used, the police power of the State is quite sufficient to interfere to prevent it.   This power of summary abatement has been sustained in many cases. *State* v. *Schlemmer*, 10 L. R. A. 135; 42 La. An. 1166; *Commonwealth* v. *Roberts*, 16 L. R. A. 400; *Baumgardner* v. *Hasty*, 100 Ind. 575; *King* v. *Davenport*, 98 Ill. 305; *Mugler* v. *Kansas, supra; Weil* v. *Records*, 9 C. E. Green, 169; *Liebig Man. Co.* v. *Wales*, 34 At. Rep. 902; *Deems* v. *Mayor*, 80 Md. 164–174; *State* v. *Mott*, 61 Md. 298; *Boehm's case*, 61 Md. 263–265; *Encyclopedia of Law*, 2nd ed., title, "Abatement of Nuisances."

It follows that the decree of the Court below must be affirmed.

*Decree affirmed.*

(Decided June 20th, 1899).