## COMMISSIONERS OF VIENNA *v.* PHILLIPS PACKING COMPANY, INC.

[No. 82, October Term, 1954.]

*Decided April 13, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*J. Edgar Harvey* and *Harry H. Cropper* for the appellant.

*Frederick P. McBriety,* with whom were *Richard M. Matthews* and *McBriety & Mace* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Dorchester County directing the issuance of a writ of *mandamus* requiring the appellant, the Commissioners of Vienna, a municipal corporation (the Town), to issue a license to the appellee, Phillips Packing Company, Inc. (Phillips), to operate migratory labor barracks in the Town of Vienna for the year 1954.

The case is the third and (so far) the last of a series of suits between the parties relating to Phillips' new barracks for migratory workers at its canning plant in Vienna, and it is the only one of the three brought to this Court on appeal. The first suit was instituted by the Town late in 1952 or early in 1953 to obtain an injunction to prevent the construction of the new barracks. It appears to have been decided in favor of Phillips on the ground that the ordinance upon which it was based had been invalidly adopted. The second suit, seeking a like injunction, was based on a building ordinance enacted in 1953, which is also involved in the present case (and which seemingly was adopted to replace the ordinance held invalid in the first suit). The second suit was brought early in 1954, and the injunction was denied a few weeks before the present case was tried. While that suit was pending Phillips applied to the Town for a license to operate its new barracks, the application was denied and this suit was instituted to compel the issuance of the license.

The Charter of Vienna provides in part as follows (Code of Public Local Laws, Article 10, Secs. 531, 533) :

"531. The Commissioners may pass any and all ordinances not inconsistent with the laws of

Maryland, they may deem beneficial to the town; and the good government thereof; to prevent, remove or abate all nuisance; * * * to regulate the erection and location of buildings, fences and enclosures in said town and to grant permits therefor; * * * to promote the morality, health, convenience and safety of the inhabitants of said town; to enforce sanitary observances and the removal of filth, and to pass all such other ordiances as they deem necessary for the preservation of the health of the town and the removal of nuisances from said town; to prohibit all business within the said town as shall, in their opinion, injuriously affect the sanitary conditions thereof or depreciate the value of adjoining property; and for the drainage of the town; to cause the drains and water courses of said town to be kept open and in repair.

\* \* \* \* \*

"533. The said Commissioners shall also have power to impose license fees on any business, occupation or employment conducted in said town whether temporary or permanent; * * *."

On August 4, 1953, the Town adopted two Ordinances which are involved in this litigation. The first of them, designated as No. 7, New Series, established a building code applicable to any building thereafter "built, enlarged, altered or moved". The second ordinance, designated as No. 8, New Series, required that anyone wishing to operate a barracks for migrant or transient labor must obtain an annual license to do so, fixed the license fee at $25, and prohibited the issuance of such a license for the use of premises which did not comply with the building code established under Ordinance No. 7.

The appellee and a predecessor corporation have operated a canning plant at Vienna for about forty years. The plant operates only during the tomato packing season, which runs from roughly the middle of July to the

latter part of September, but there are and long have been barracks on the packing plant property which are used to house migrant laborers. These workers usually arrive in early June and remain until about the first of October. Before the Phillips plant begins operations they work as bean pickers on nearby farms, and Phillips needs the beans for canning. In the past, several families have stayed in the old barracks during the winter, and there was testimony indicating serious overcrowding of the old barracks during the summer season. Primarily, as a result of delay due to the earlier litigation, and in part because of a change in plan, the new barracks which are involved in this litigation were built (with the exception of a part of the foundation for one structure) in 1954, and they replaced old and thoroughly dilapidated barracks. No permit for their construction was obtained and, as above stated, the Town's effort to enjoin their construction failed.

Though the present case arises under the licensing ordinance, the controversy turns in large part on the validity and applicability of the building ordinance, since the refusal of the license was based upon non-compliance with the building code.

Some provisions of that code which appear to be pertinent are contained in Sections 3, 14 and 41. Under Section 3 (a), no buildings may be built, enlarged, altered or moved without a permit, and applications for permits must be made in prescribed manner. Section 14 contains requirements with regard to windows to afford light and ventilation for habitable rooms. Section 41 deals with plumbing and requires, *inter alia,* by Par. 2 (a), that every building in which people live, work or congregate shall be provided with an ample water supply and, by Par. 3 (a), that "except as otherwise prescribed by law or ordinance, in every existing building * * * and in every building hereafter erected, where there is continuous human occupancy * * *, there shall be a sufficient number of suitable and convenient water closets, properly connected with the drainage system."

The appellant places emphasis upon (1) the definition of an "apartment" contained in Section 7 as "a room or suite of two or more rooms, in a residence building occupied as the home or residence of an individual, family or household", (2) the requirement contained in Section 41, Par. 3 (b) that "In dwellings and multi-family houses there shall be at least one separate water closet within each apartment" and (3) the requirement contained in Par. 2 (b) of Section 41 that "In every multi-family house there shall be in each apartment at least one kitchen sink with running water and waste connection." From these provisions the appellant argues that each of the 8 x 10 feet or 12 x 10 feet rooms in the barracks intended as sleeping quarters for from two to four persons must have its separate toilet facilities and kitchen sink. The appellee contends that such requirements are arbitrary and unreasonable and hence void. Whether the construction contended for by the appellant is correct or not depends upon the meanings of "dwelling" and of "multi-family house", which are set forth in Section 7 of the building code. If they are not applicable to these barracks—questions which do not appear to have been tried and decided in the lower court—it would seem that the catch-all and less rigorous provisions of Section 41, Pars. (2) (a) and 3 (a) above quoted, would be applicable.

The evidence is clear that there is no running water and that there are no water closets in the barracks buildings, though there are showers and cooking facilities available close to the barracks. The only toilet facilities are at the cannery and they are at a distance which varies from 156 feet to 336 feet from different parts of the barracks. There was also testimony to the effect that the barracks did not comply with either the ventilation requirements or some of the fire prevention requirements of the building code.

As the case comes to us, the only point or question now in controversy which plainly appears by the record to have been tried and decided by the court below is thus

stated in the opinion of the learned trial judge: "Had the Phillips Packing Company been coming newly to Vienna to engage in the canning business there, and were about to erect a building, we have no doubt that it could not have done so without meeting the provisions of the Ordinance No. 7 passed by the Commissioners of Vienna, assuming, but not deciding, as that is not necessary to my conclusion in this case, that the Ordinance is reasonable and fair, and not arbitrary." By Rule 9 of this Court of the Rules and Regulations Respecting Appeals, we are precluded from deciding any other questions. See also *Ecker v. First National Bank,* 62 Md. 519.

We are unable to agree with the view of the learned trial judge that the building code is not applicable to Phillips because Phillips is an old established business in Vienna and not a newcomer. The building ordinance in the instant case in terms applies to anyone—whether an old, established firm or a newcomer—who may wish to construct a new building (or to alter an old one) in Vienna. It provides no exceptions for old businesses. The evidence is clear that the barracks in question are new buildings—not renovated or repaired old buildings; and there is certainly strong evidence to show that at least the bulk of the construction work was done after the passage of the 1953 ordinances. If this is so, their actual operation is prospective; but even if it were not so, certainly a reasonable sanitary regulation can be made effective as to existing structures. *Petrushansky v. State,* 182 Md. 164, 32 A. 2d 696; *Sprigg v. Garrett Park,* 89 Md. 406, 43 A. 813.

Because of the view entertained by the trial judge as to the non-applicability of the building ordniance, he did not pass upon a number of questions which will undoubtedly be pertinent in any further litigation. Among these are: (1) whether the motives of the Commissioners in adopting these ordinances would invalidate them; (2) whether either the requirements for a "sufficient number of water closets, properly connected with the drainage system", or the requirements for a separate water

closet and a sink for each apartment are applicable; (3) whether the requirements of the building code with regard to fire protection have been met; (4) whether the requirements of that code relating to ventilation have been met; (5) whether any of the above provisions of the building code, as applied to the facts of this case, are arbitrary or unreasonable; (6) whether the licensing ordinance is *ultra vires,* arbitrary or unreasonable; (7) whether compliance with the State Plumbing Code would dispense with the necessity of complying with the Town building ordinance. These are questions which have been raised in argument or on the briefs in this Court. A still further question might have been raised as to whether or not the appellee, having invoked the license ordinance and the aid of the court to obtain a license is estopped to challenge its validity. The state of the record prevents our passing on any of them now.

The present suit involves the validity of various provisions of the building ordinance and the controversy between the parties over those provisions continues. While the year for which the license sought by the *mandamus* proceeding has now expired, the same controversy will doubtless be renewed this year or until the questions raised or sought to be raised in this case are finally determined. See *Close v. Southern Maryland Agr. Ass'n.,* 134 Md. 629, 108 A. 209, and *Sheehy v. Thomas,* 155 Md. 688, 142 A. 506. Cf. *Lloyd v. Board of Supervisors of Elections,* 206 Md. 36, 111 A. 2d 379, in which the subject of moot cases is extensively reviewed, and *Price v. Cohen,* 206 Md. 45, 109 A. 2d 920. Here, under our Rule 9, we cannot decide most of the questions because they do not appear to have been tried and decided by the trial court, quite apart from whether they are moot. On the one question as to whether or not the building ordinance here involved is applicable to an old and established business, we have expressed our opinion because of the continued vitality of the question and of the controversy and because that ordinance continues in force. However, because the instant case in-

volved a license for a year which has ended, the case has become moot. We shall therefore dismiss the appeal, but without prejudice to the future litigation of questions pertaining to the validity of the ordinance here involved. *Restatement, Judgments,* Sec. 69, par. 2.

*Appeal dismissed, without prejudice,*

*with costs to the appellant.*