(64 App. Div. 293.)

STEEFEL et al. v. ROTHSCHILD.

(Supreme Court, Appellate Division, Second Department. October 4, 1901.)

1. LANDLORD AND TENANT—DISPOSSESSION BY SOVEREIGN POWER—LIABILITY OF LANDLORD.

A tenant takes the premises subject to the risk of being dispossessed through the condemnation of the leased building as unsafe and dangerous, without recourse to the landlord for damages resulting from such removal.

2. SAME—EFFECT OF SURRENDER.

Where a tenant surrenders the premises because the leased building was condemned as unsafe and dangerous, and in turn accepts a rescission of the lease, he cannot recover of the landlord for damages growing out of the removal of the goods to another store.

Goodrich, P. J., dissenting.

Appeal from trial term, Kings county.

Action for damages by Bernard L. Steefel and another against Jacob Rothschild. From a judgment in favor of the plaintiffs and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Benjamin F. Tracy (John J. Crawford, on the brief), for appellant. Moses J. Harris, for respondents.

WOODWARD, J. A single question of law is presented upon this appeal, and is brought here by the exception to the refusal of the trial court to dismiss the complaint. The defendant is the owner of certain premises at the corner of Fulton and Jay streets, in the borough of Brooklyn, which, on the 21st day of June, 1898, was occupied by an eight-story building, with two cellars. On the date last above mentioned the defendant executed to the plaintiffs a written lease of the store on the ground floor, to be occupied by them as a clothing store. Plaintiffs entered into possession, fitted up the place for the purposes of their business, the defendant retaining possession of the cellars and other parts of the building. The plaintiffs paid the rent of this store for the month of December in advance, and on the 2d day of that month the city of New York notified the plaintiffs that the building was in a dangerous condition, and liable to collapse, and took possession of the same, and commenced an action against the defendant in this action to have the same condemned, resulting in a judgment of condemnation, in pursuance of which the building has since been demolished. While these matters were in progress, the building department took steps to make the building safe for the public, destroying its usefulness for the purposes of the plaintiffs, who removed their goods, and on the 15th day of December, 1898, addressed a letter to the defendant, stating that they had "been obliged to quit and vacate the said premises because the same are dangerous and untenantable, in consequence of your failure to maintain the parts of the building in your possession and under your control in such reasonably safe state as to support and preserve the premises rented to us against injury and collapse. We

hereby surrender possession of the said premises rented to us by you, and return to you the keys therefor. By reason of the condition of the said premises, and the necessity of removal therefrom, we have suffered great damage, for which we will hold you responsible." The defendant, on the 19th of December, accepted the surrender, but denied any liability for damages, and this action was brought to recover the same; the theory, as expressed in the complaint, being that "under and by virtue of the fact that the defendant leased the premises aforesaid to the plaintiffs, and retained in his possession and under his control the other portions of the building not let and rented to the plaintiffs, the said defendant became and was under an obligation to the plaintiffs to keep and maintain the parts of the building not let and rented to the plaintiffs in such secure, firm, stable, and proper condition that the premises let and rented to the plaintiffs might not be endangered, rendered insecure, or untenantable, or unfit for occupancy, or unfit for the purposes of the business for which the same had been let and rented by the defendant to the plaintiffs." The issues were tried before a jury, resulting in a verdict for the plaintiffs for $5,000, and the question brought before this court is whether the trial court erred in refusing to dismiss the complaint upon the motion of the defendant upon the ground "that no express promise of the defendant to repair or preserve the building had been alleged or proved, and upon the ground that the defendant was under no obligation to keep the premises in a tenantable condition during the lease." A motion was also made to set aside the verdict, but it is not necessary to dwell upon this question, as we have reached the conclusion that the plaintiffs cannot recover damages for the loss to their business under the circumstances disclosed by the evidence, and that the complaint should have been dismissed.

At common law a tenant is a purchaser of an estate in the land or building hired (Bowe v. Hunking, 135 Mass. 380, 385, 46 Am. Rep. 471), and Keates v. Cadogan, 10 C. B. 591, states the general rule that no action lies by a tenant against a landlord on account of the condition of the premises hired, in the absence of an express warranty or of active deceit. This is the general rule of caveat emptor. In the absence of any warranty, expressed or implied, the buyer takes the risk of quality upon himself, and, in the absence of a covenant to repair or rebuild, the landlord owes no duty to his tenant. He is under no implied covenant to repair, or even that the premises shall be fit for the purposes for which they are leased, and the tenant is bound to pay the stipulated rent. Viterbo v. Friedlander, 120 U. S. 707, 712, 7 Sup. Ct. 962, 30 L. Ed. 776, and authorities there cited. This rule of the common law has been so far modified by the provisions of chapter 345 of the Laws of 1860 that in the case of the destruction of a building the tenant is entitled to exercise an option either to declare the lease at an end, and to quit and surrender possession of the premises, or to continue in the possession thereof until the expiration of his term, paying the rent reserved by his lease (Smith v. Kerr, 108 N. Y. 31, 34, 15 N. E. 70, 2 Am. St. Rep. 362); but we find no suggestion that the landlord may be held liable for damages resulting to the tenant by reason of the building being un-

tenantable. Even under the civil law, which regards a lease for years as a mere transfer of the use and enjoyment of the property, and holds the landlord bound, without any express covenant, to keep it in repair, and otherwise fit for use and enjoyment for the purposes for which it is leased, it is held that, if the tenant is expelled by the act of the sovereign, by vis major, or by some other accident, or if the property is destroyed by an inundation, by an earthquake, or other event, the lessor, who was bound to give the property, cannot demand the rent, and will be bound to restore so much of it as he has received; but without any other damages, for no one ought to answer for accidents. Dom. Droit Civ. pt. 1, lib. 1, tit. 4, § 3, No. 3. In the case at bar the tenant was expelled from the premises by act of the sovereign power, manifesting itself through the municipality of the city of New York; and it would be strange, indeed, if a jurisdiction recognizing the rules of the common law should hold a landlord to a higher degree of liability than would find sanction in the civil law. We find no sanction for such a liability in any of the adjudicated cases, and we are of opinion that the plaintiffs took the premises subject to the risk of being dispossessed through the condemnation of the building, without recourse to the defendant for damages resulting from such removal.

The suggestion that the rule is different because the plaintiffs only had a portion of the building, while the remainder was in the possession and control of the defendant, is fully answered by the court in Doupe v. Genin, 45 N. Y. 119, 123, 6 Am. Rep. 47, and it does not seem to be necessary to discuss the question at greater length at this time. The plaintiffs gave up the possession of the building, and ceased paying rent, when it was destroyed, or, what was equivalent, when it had ceased to be tenantable for business purposes through the action of the municipality. Without reference to the statute of 1860, this, with the consent of the defendant, terminated the relation of landlord and tenant. The contract was at an end. There was no damage to the goods of the plaintiffs. They were in a building which the defendant had rented to them, and no act of negligence is alleged by which the goods themselves suffered injury; and, as the tenants elected to bring the contract to an end, and to remove their goods, it is not clear how they can claim damages under a breach of the contract. The damages, if any, resulted from the necessity of removing the goods to another store, but it was the tenants who elected to remove them, and to declare the contract at an end. By doing this they were relieved of the common-law liability for further rents, but they cannot recover damages of the defendant for an act which was done of their own volition. The tenants had a right to build on the premises, and occupy such building for the remainder of the term, if they chose to do so under the conditions of the original lease; or, if the landlord had volunteered to rebuild, the tenants would have had the right to enter into possession of the new structure, and retain it for the term (Smith v. Kerr, supra); but, having elected to terminate the lease, thus relieving themselves of the burden of paying the rent, they cannot now be heard to say that they have suffered damages by reason of this action on their part. What might have been the plain-

tiffs' rights in the premises if they had remained in possession and had continued to pay rent, damages resulting through the negligence or unskillfulness of the defendant in complying with the mandate of the court in the condemnation proceedings, it is not necessary or profitable here to consider, but it is certain that, having voluntarily relinquished their rights under the contract, and in turn accepted the benefits of a rescission of the lease, the plaintiffs have no cause of action for damages growing out of the removal of the goods to another store. The judgment should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. (dissenting). A careful consideration of the opinion of the court, written by Mr. Justice WOODWARD, fails to secure my concurrence, and for these reasons:

The action is for damages sustained by the plaintiffs by reason of their eviction from premises at the corner of Fulton and Jay streets, Brooklyn. Prior to June, 1898, the defendant was the owner of the land, and had erected thereon a large eight-story building, with two cellars. On June 21st the defendant executed to the plaintiffs a written lease of the store on the ground floor, to be occupied by them as a clothing store, and they entered into possession and fitted up the store for the purposes of their business. The defendant retained possession of the cellars and other parts of the building, and the plaintiffs paid the rent for December in advance. On December 2d the city of New York notified the plaintiffs that the building was in a dangerous condition, and liable to collapse, took possession of the same, and commenced an action against the defendant to have it condemned. On the trial of the action the court found as matter of fact that the building rested upon brick piers in the cellar, capped with stone, surmounted with cast-iron shoes, upon which were iron columns that carried a dead load of 306,000 pounds on each pier; that "the brickwork throughout the cellar at the present time is uniformly bad, and the mortar can easily be removed from the bed beneath the capstones and brickwork and crushed to a powder"; that several of the iron plates and capstones were broken; that some piers were overloaded to the extent of eight tons; that foundation piers were cracked; that the premises were unsafe and dangerous, and the building in imminent danger of falling. And on December 13th judgment was rendered commanding the defendant to take down and remove the four upper stories and the brick walls on both streets. Meanwhile the building department of the city erected a number of massive shoring timbers from the curb to the second and third stories of the building, put up a rope barrier about the sidewalk, and stationed policemen, whereby the public was excluded from the store of the plaintiffs, and their business use of the building was practically destroyed. On December 15th the plaintiffs, having removed their stock, addressed and delivered a letter to the defendant, stating that they "have been obliged to quit and vacate the said premises, because the same are dangerous and untenantable in consequence of

your failure to maintain the parts of the building in your possession and under your control in such reasonably safe state as to support and preserve the premises rented to us against injury and collapse. We hereby surrender possession of the said premises rented to us by you, and return to you the keys therefor. By reason of the condition of the said premises and the necessity of removal therefrom, we have suffered great damage, for which we will hold you responsible." On December 19th the defendant wrote to the plaintiffs, accepting the surrender, but denying his liability for damages. Subsequently the entire building was taken down in accordance with the judgment. The plaintiffs thereupon brought this action to recover their damages. The complaint alleges that the building was in a dangerous condition, unsafe for human occupancy, and liable and likely to fall; and that the defendant knew the facts, or could, with reasonable diligence, have known them, but that they were unknown to the plaintiffs, and could not, by reasonable diligence, have been known to them. The theory of the action is expressed in the allegation of the complaint:

"And under and by virtue of the fact that the defendant leased the premises aforesaid to the plaintiffs, and retained in his possession and under his control the other portions of the building not let and rented to the plaintiffs, the said defendant became and was under an obligation to the plaintiffs to keep and maintain the parts of the building not let and rented to the plaintiffs in such secure, firm, stable, and proper condition that the premises let and rented to the plaintiffs might not be endangered, rendered insecure, or untenantable, or unfit for occupancy, or unfit for the purpose of the business for which the same had been let and rented by the defendant to the plaintiffs."

The issues were tried before a jury, which found a verdict for the plaintiffs in the sum of $5,000. At the close of plaintiffs' evidence, and again at the close of all the evidence, the defendant moved for a dismissal of the complaint on the ground "that no express promise of the defendant to repair or preserve the building had been alleged or proved, and upon the ground that the defendant was under no obligation to keep the premises in a tenantable condition during the lease." The defendant also moved to set aside the verdict and grant a new trial on the ground that the verdict was for excessive damages, and contrary to the evidence and to the law. There is no certificate that the record contains all the evidence, and it must, therefore, be assumed that there was evidence upon all the allegations of the complaint sufficient to sustain the verdict and its amount. The appeal comes to this court solely on the exception to the refusal of the court to dismiss the complaint and the appeal from the order denying a new trial. Defendant's counsel, in his brief, concedes that the exception to the refusal to dismiss the complaint raises the only question presented on this appeal. His contention is that there was no legal liability upon the part of the defendant to keep the premises in tenantable condition. The lease contains a covenant that lessees, on performing the covenants on their part, "shall peaceably hold and enjoy the said premises for the term herein leased." In Boreel v. Lawton, 90 N. Y. 293, 43 Am. Rep. 170, the court said (pages 296, 297, 90 N. Y., and page 171, 43 Am. Rep.):

"The general rule is that eviction is necessary to constitute a breach of this covenant. 1 Rawle, Cov. 144. 'The covenant for quiet enjoyment,' said Spencer, J., in Whitbeck v. Cook, 15 Johns. 483, 8 Am. Dec. 272, 'extends to the possession, and not to the title, and is broken only by an entry and expulsion from, or some actual disturbance of, the possession.'"

This latter case was decided upon the authority of Waldron v. McCarty, 3 Johns. 471, and Picket v. Weaver, 5 Johns. 122. In the case at bar there was a constructive eviction, founded upon a condition of the premises which amounted to a nuisance. Bradley v. De Goicouria, 12 Daly, 393. Such was the effect of the judgment of the court in the action brought by the city against the defendant; and, even if the defendant were not bound by that judgment, the same facts appear in the evidence in the present action, and are sufficient to show the creation and maintenance of a nuisance by the defendant.

It is true that the general principle is well settled that, as between landlord and tenant, there is no implied covenant in a lease that the demised premises are fit for occupancy, or the particular use which the tenant intends to make of them. Thomp. Neg. 323; Edwards v. Railroad Co., 98 N. Y. 249, 50 Am. Rep. 659. But there are exceptions to this general rule. In O'Brien v. Capwell, 59 Barb. 497, it was declared that, as between landlord and tenant, "when there is no fraud or false representations or deceit, and in the absence of an express warranty or covenant for repair, there is no implied covenant that the demised premises are suitable or fit for occupation, or for the particular use which the tenant intends to make of them, or that they are in a safe condition for use; and that the principle of caveat emptor applies to all contracts for the letting of property, real, personal, or mixed, as much as to contracts of sale, with one or two recognized exceptions, which do not apply in this case." It does not appear what were the exceptions to the general rule to which the court referred, but I think that one of them occurs where the landlord, prior to the lease, has created, and both before and after the execution of the lease has maintained, such a dangerous condition of affairs as amounts to a nuisance, and leases the premises knowing the existence of such nuisance, or being bound to know the same, and the lessee has no means of knowing the facts; and such is the condition of facts established by the record and verdict in the present action. This exception is recognized in a case cited by the learned counsel for the defendant. In Krueger v. Ferrant, 29 Minn. 385, 13 N. W. 158, 43 Am. Rep. 223, which was an action for damages occasioned to a tenant by a defective roof, the court said (pages 387, 388, 29 Minn., page 159, 13 N. W., and page 225, 43 Am. Rep.):

"The authorities generally agree that the parcel tenant or owner may, in such case, have an easement of ingress or egress over the common passageways and of shelter in the roof. But this does not throw upon the landlord the burden of actively undertaking to keep the building or any part of it in repair, unless he has agreed to do so, or unless it is in danger of becoming a nuisance. In Chauntler v. Robinson, 4 Exch. 163, the court decide that the only obligation cast upon the owner is to prevent its becoming a nuisance."

In Quigley v. Manufacturing Co., 26 App. Div. 434, 50 N. Y. Supp. 98, we cited (page 440, 26 App. Div., and page 102, 50 N. Y. Supp.)

and followed the doctrine stated by Van Brunt, J., in Bold v. O'Brien, 12 Daly, 160:.

"The landlord, as far as the tenant is concerned, where the tenant occupies but a small portion of the tenement, is bound to keep the parts of the tenement under his control in such a state of repair that the tenant may occupy his premises with safety."

We added (Mr. Justice Bartlett writing):

"The rule has frequently been asserted in the law of landlord and tenant that a landlord who occupies the upper story of his building, leasing the lower story to a tenant, may not negligently derange the construction of the upper story so as to injure the property of the tenant on the floor below."

There is abundant evidence to show a condition of affairs amounting to a nuisance constituting a breach of the covenant for quiet enjoyment, and justifying the removal of the plaintiff from the building; and this was such a constructive eviction as made the defendant liable for all the damages naturally and necessarily resulting therefrom.

Defendant's counsel, however, contends, on the authority of Kelly v. Church, 2 Hill, 105, that the rent reserved in the lease is the measure of the plaintiffs' damage, as being a just equivalent for the use of the demised premises. That case was one where the plaintiff claimed to have been evicted by failure of title, and there was no such question as is raised here, of eviction by a nuisance, and the measure of damages is different. In Snow v. Pulitzer, 142 N. Y. 263, 36 N. E. 1059, where a lessee of premises which he had leased and occupied for business purposes was evicted, and his business broken up by the unlawful acts of his landlord, his expenditures in fitting up his store, and his damage to stock, and the prospective profits of his business for the remainder of his term were held to be proper items of damages.,

It may also be said that by his failure to bring up the record the defendant is precluded from setting up that the damages are excessive.,

For these reasons, I think that the judgment should be affirmed.