Hosea, J.
Plaintiff is lessee, under an unexpired lease, of a storeroom twenty by forty feet, fronting on the west side of Race street above Sixth street at the corner of an «lley. The premises are part of a large building fronting about fifty feet on Sixth street at the northwest corner of Race and Sixth, and extending northward ninety feet on Race to the alley. The entire building, although under one roof, is made up of several buildings, as *394 originally constructed at different times, with an average life of about fifty years. '
The lease to plaintiff from the trustees of the Frank estate, was made on November —, 1903, for the “storeroom No. 607 Race street,” for the “term of two years, three months and twenty days, ending February 28, 1906,” at a monthly rental (in the usual form of lease, commonly called the “short form”) and contains the following covenants:
“ It is also agreed that if said lessees shall perform their obliises as they now are and to make all improvements and repairs, etc.
‘ ‘ It is also agreed that if said lessees shall perform their obligation under this lease they shall quietly have end enjoy said premises during said term free from molestation from said lessors. ’ ’
There is a further clause releasing the lessee from rent in case the premises are destroyed or rendered untenantable by fire or other casualty.
On July 6, 1904, the trustees were served with a notice by the building inspector of the city of Cincinnati, setting forth that as the building fronted fifty feet on Sixth street and extended back fifty feet, being quite old and, by reason of extensive changes and alterations made at various times, had become very materially impaired in stability so as to warrant the belief that its failure was imminent, and that its structure and condition made it a “death trap” and “unfit for occupancy, and a menace to life and property,” they were required to have the building vacated without unnecessary delay, and all weak and defective portions reconstructed, etc., and, if found impracticable to repair, to proceed with immediate removal; in default of which the inspector would proceed as the law directs and assess all costs against the property.
On August 9, 1904, the building inspector. served upon the trustees, defendants, a substantially similar notice as to the building adjacent to that mentioned, on the north, fronting forty feet on Race, including plaintiff’s storeroom, stating that said building was unsafe and dangerous for reasons set forth, and that the condition of its walls would become hazardous “if dis *395 turbed through- fire or the demolition -of the buildings adjoining to the south;” -and that “the whole structure would become unsafe and liable- to collapse, should the adjoining buildings, of which they are a part, be razed, and- would also have to be taken down.”
The testimony of the building inspector -on the stand in this cast confirms in greater fullness and detail his views and observations of the unsafe condition of the entire building, and his attitude of refusal to permit -any attempts to repair or reconstruction -other than by first razing the entire structure—considering the whole as one structure.
Testimony of architects was introduced to- show that it would be practicable, by shoring and other repairs, to make the north building reasonably safe; but it -does not seem to me that -any such testimony can be considered except where fraud on the part of the inspector is charged.
As early as “Mouse’s case,” 12 Co., 63, the right to pull down a house to prevent a spread of fire was sustained; and the same thing is held in a ease in 4 Term, 797, wherein Buller bases this right'o-n the ancient maxim, “Solus populi est suprema lex.”
In an early Massachusetts, case, on the same subject, Taylor v. Inhabitants of Portsmouth, 49 Mass., 462, 465, the court says:
“If there be no necessity, then the individuals who do 'the act shall be responsible. This is the most reasonable, as the law has vested the authority in the proper officers to judge of that necessity.”
The municipal code of this state, adopted in 1902 (96 O. L.. 23, Section 7, Par. 13), confers upon cities general power, “to provide for the removal -and repair of insecure buildings.” This power had long been -exercised theretofore under special laws of the state and ordinances of the city passed in pursuance of such laws.
The building inspector is appointed and his powers defined under ordinance 218, passed August 15, 1898, but amended— as to Section 6, which is here in question—June 9, 1902.
Speaking generally, he is -authorized to examine buildings thought to be insecure and give orders for their repair, etc., *396 and it is made a penal offense to fail to comply with his orders in the premises. Pie is also vested with authority to permit or refuse specific repairs.
In Connors v. Mayor of New York, 11 Hun., 439, it is held that:
“The powers conferred on this department (buildings, etc..) are in many respects judicial, and the machinery of the law is put summarily in motion where the department acting under the laws, calls for its application.” (Citing Maxmilian v. Mayor of New York, 62 N. Y., 160.)
In Snarr v. Baldwin, 11 Up. Can. Com. Pl., 353, there is a full discussion of the effect of the action of city authorities upon the contract relations of lessor and lessee. It is there held that the right of the city was not a title paramount in law, but a superior authority; that the act of the city was not brought about by any act of the lessor; that the covenant for quiet enjoyment is simply indemnity against acts of particular persons, that is, those having lawful title before the covenant was entered into.; and that the rule that a contract may be dissolved by superior authority so as to absolve a contractor from performance, applies in such case.
The same principle is illustrated in a series of cases showing that when a performance of a condition of a contract becomes impossible by the operation and effect of a statute, and performance becomes thereby illegal, performance is excused. Shellington v. Howland, 53 N. Y., 371, 372.
In Heine v. Meyer, 61 N. Y., 171; it is held that when a contractor is stopped in the work of repairing a building by the building inspector, further performance is excused, but he may sue and recover for the work done, provided that the defect is not of his making. And to the same effect are: Jones v. Judd, 4 N. Y., 411 Niblo v. Binsse, 1 Keyee (N. Y.), 476.
In Ohio, the rule of “caveat emptor,” is well established as applicable to the rights and obligations of the lessee.
In Jones v. Roberts, 32 Bull., 118, Judge Pugh of the Franklin common pleas, cites Bowe v. Hunking, 135 Mass., 380, 386, quoting the statement therefrom that, “the law is unusually strict in exempting the landlord from liability for injuries *397 arising from defects where there is no warranty and no actual deceit, ’ ’ and he himself deduces the rule that the tenant assumes all risks of the premises being inhabitable and unsafe, in the absence of a warranty in the contract.
In Burdick v. Cheadle, 26 Ohio St., 393, it is said, passim p. 397, “There is no implied engagement or promise, on the part of a lessor, that the leased premises are in a safe condition.” See also: Shinkle v. Birney, 68 Ohio St., 328; Burns v. Luckett, 3 Bull., 517.
In Steefel v. Rothschild, 72 N. Y., Supp., 171, it is held that a tenant takes possession under his lease “subject to the risk of being dispossessed through the condemnation of the leased building as unsafe and dangerous.” This principle has its exceptions very properly, where the lessor purposely renders the building-unsafe and procures the destruction of the building through condemnation proceedings, as in Silber v. Larkin, 94 Wis., 9 (68 N. W. Rep., 406).
Steefel v. Rothschild, supra, was a suit in damages based upon deceit amounting to fraud in the lease contract, with reference to unsafe conditions, known to lessor but not to the lessee, nor discoverable by the latter in the exercise of ordinary diligence. It was first affirmed in 82 N. Y. Supp. and subsequently reversed on final hearing in 72 N. E. Rep., 112; holding the lessor liable as upon eviction under the rule that upon notice to take from jury, the evidence and all legitimate inferences therefrom are to be taken most strongly against the motion. ■ The effect of the reversal therefor, simply establishes upon the facts of that case the usual exception in a ease of fraud, and it may be said here as elsewhere that the exception proves the rule and the original statement stands as authority unaffected by the subsequent proceedings.
The principle as above stated, is very fully covered by the ease of Conner v. Bernheimer, 6 Daly, 295, wherein it is held that the covenant of quiet enjoyment is necessarily entered into subject to the possibility of such a state of things (as illustrated in that case) occurring from the nature and condition of the premises devised, and the rights of adjoining owners. In the absence of a contract to repair or rebuild, the tenant takes the *398 premises as they are; and if, in consequence of natural decay or the taking down of a building by an adjoining owner, it becomes indispensible as public duty for the public safety, to take down the building to prevent its falling down, there is no violation of the covenant for quiet enjo'jtnent, which is nothing more than—to use the language of Mr. Taylor—that the lessee shall not be evicted nor disturbed by persons deriving title from the lessor by virtue of a title paramount.
The taking down of a building as an act of necessity to prevent its falling down, either by the public authorities, or in obedience to their orders, is not an eviction or disturbance of the possession by title paramount, there being no question of ■title involved in such act. The taking down and destruction of a building under such circumstances, has no more effect upon covenants in a lease than the destruction by ñre, which does not produce the effect of eviction, unless the landlord has expressly covenanted to rebuild .or keep in repair. Tayloaj, Landl. & Ten., Sections 305, 309.
The point is that the right of the state under its police powers to deal with the subject of insecure buildings, founded, as Justice Buller truly says (4 Term, 797, supra), upon the principle that the safety of the people is the supreme law, is superior to titles paramount derived through individual owners; and consequently the contracts of parties in relation to property uses are entered into in view of these existing and superior rights of the state and are subject to them.
In the ease at bar, the question is not complicated by stipulations often found in the covenant for quiet enjoyment, as exist in some of the cases cited by plaintiff’s counsel. The plaintiffs here took the premises “as they were” and stipulated to make “all improvements and repairs”; and they were guaranteed quiet possession only as against molestation from the lessors
The terms of the covenant were a material element, for example, in Kansas Invest. Co. v. Carter, 160 Mass., 421. The covenant in that case was against hindrance or interruption from “all persons whomsoever”; which covenant, says the court, “bound the lessors not to do any unnecessary thing,” and, as *399 the requirements of the authorities was in the alternative, it became a question of proof; and, as the lower court had found as a fact that the building could be made safe without taking down, the right of election, it is said, was limited by the nature of the covenant.
It should also be borne in mind, that, in some of the states, statutes provide for a legal proceeding to determine the question whether repairs are practicable or removal is necessary. In such eases the action of the building inspector can not be final.
Our law—whether wisely or not, is not in question—places the power of dealing with insecure buildings in the municipality, which acts through its duly appointed officer. As already pointed out, his orders are enforceable by penal prosecution, and by his further power to dictate- the method of procedüre by refusing permits to repair, if in his opinion the building should be taken down. Unquestionably .an abuse of these powers can be restrained by the courts; but in the proper exercise of his official functions he is supreme. As was said in Cincinnati v. Moorman, 25 Bull., 126, “the building -act * * # being enacted for the protection of life, it must be given a liberal construction, such as will effectually accomplish its purpose.” Sprigg v. Garrett Park, 89 Md., 406 (43 Atl. Rep., 813, 815).
The rule plainly deducible from the cases cited, seems to me, on principle, to be this: That, with respect to the superior power of the state in relation to insecure buildings, the lessor and lessee stand on an equal footing. The law applies to both-. The destruction by the order of the state, through its officers, is not an eviction, and creates no liability on the part of the landlord in the absence of a covenant broad enough to survive such action. It is possible the views herein expressed might derive some support from Revised Statutes, 4113, but it does not seem to me necessary to refer to it. Winton v. Cornish, 5 Ohio, 477.
In the present case, the covenant is specifically limited, and falls far short of sustaining a demand -on the part of the lessee. The orders of the building inspector and his refusal to issue permits for repairs with a view to preservation, are -tantamount to a specific order to tear down the buildings, and inasmuch as no steps were taken by either party to obtain a review of the *400 order by the -board provided for by the ordinance, the order was final, and practically put an end to the lease contract.
Samuel Wolf stem and Pogue & Pogue, for plaintiff in error.
L. C. Black, Stephens, Lincoln & Stephens and Kramer & Kramer, for defendants in error.
I hav-e carefully examined all the authorities cited by plaintiff at the hearing, and find in them no support for any other view as applied to the facts presented here. Judgment must be in favor of the defendants, and it is so ordered.
Suit dismissed with costs.
The decision in general term affirmed the judgment below, and is subjoined!:
Ferris, J.; Hoeei-ieimer, J.; and Caedwele, J., concur.
The plaintiff below is the plaintiff in error here, and as lessee under an unexpired lease of a storeroom, 20 by 40 feet, being a part -of the premises situated at the northwest corner of Race and Sixth streets, in the city of Cincinnati, sought to obtain an injunction to restrain the defendants from tearing down the building of which the leased room was a part.
The tenancy was admitted, and there was no serious discussion with reference to the terms under which the plaintiff was holding, and no difference as to the conditions of the lease. The court below found that the owners of the legal title to the property had been served with notice by the official building inspector of the city of Cincinnati, of the dangerous condition of the property, declaring the same “unfit for occupancy and a menace to life and property” and ordering immediate repairs, and in the event of the impracticability of repairing, ordered the immediate removal of the structure.
The testimony of the building inspector and others satisfied the court below that the entire building was unsafe and irreparable, and .indcr such conditions the court found under the authorities that the legal owners- were in duty bound to respect the orders of the official building inspector of -the municipality, whose duty was-'defined by ordinance of the city of Cincinnati, requiring not only the -examination of the buildings, but the *401 giving of orders for repair, and if necessary the razing of the buildings, on the grounds of public safety. Under such orders the defendants were acting when the injunction was sought.
The facts justifying the application of the doctrine calling for a dissolution of contract of lease when the necessity is declared by an authority recognized in the law as superior to that of the contracting parties, were properly found in this case by the court below. The authorities cited ¡to support that contention in o-ur judgment justified the position taken by the trial judge in refusing the injunction. We therefore affirm the finding on the authorities cited by the trial judge.