## BOWERS v. CITY OF INDIANAPOLIS.

[No. 21,053. Filed October 11, 1907.]

1. MUNICIPAL CORPORATIONS.—*Nuisance.*—*Ordinances.*—*Statutes.*—
Under §3794 Burns 1901, Acts 1891, p. 137, §23, and §3477 Burns
1905, Acts 1905, p. 219, §53, authorizing municipal corporations
"to declare what shall constitute a nuisance," and §1709 Burns
1901, §1640 R. S. 1881, and §1719 Burns 1905, Acts 1905, p. 584,
§62, prohibiting municipal corporations from making an act, con-
stituting a crime, punishable by ordinance, municipal corporations
have the power to declare to be public nuisances, those things—
not crimes, or nuisances *per se*—which may reasonably be con-
sidered as constituting a public nuisance. p. 106.

2. NUISANCE. — *Ordinances.* — *Reasonableness.* — Where municipal
corporations are empowered to declare what shall constitute
nuisances, their reasonable exercise of such power cannot be
controlled nor overturned by the courts. p. 107.

3. SAME.—*Smoke.*—*Ordinances.*—Under §3794 Burns 1901, Acts
1891, p. 137, §23, and §3477 Burns 1905, Acts 1905, p. 219, §53
authorizing municipal corporations "to declare what shall con-
stitute a nuisance," cities may declare the emission, within the
corporate limits, of dense black or dense gray smoke to consti-
tute a nuisance. p. 108.

4. MUNICIPAL CORPORATIONS.—*Ordinances.*—*Unequal Privileges.*—
*Nuisance.*—*Smoke.*—A municipal ordinance declaring the emis-
sion of dense black or dense gray smoke from factory and *quasi*-
public building furnaces to constitute a nuisance, is not void,
though it excepts therefrom the emission of smoke from private
residences. p. 111.

5. SAME.—*Ordinances.*—*Several Subjects.*—*Constitutional Law.*—
A municipal ordinance is not rendered invalid because it con-
tains several different subjects, the constitutional provision as to
a single subject's being embraced in one act not applying. p. 111.

From Marion Circuit Court (15,615) ; *Henry Clay Allen,*
Judge.

Prosecution by the City of Indianapolis against Frank
Bowers. From a judgment of conviction, defendant ap-
peals. *Affirmed.*

*Robert W. McBride,* for appellant.

*Frederick E. Matson, Crate D. Bowen* and *Joseph F.
Cowern,* for appellee.

GILLETT, J.—Appellant commenced this action to recover

for the violation of an ordinance. Omitting the penalty clause, the section charged to have been violated is as follows :

"The emission of dense black or gray smoke from any smokestack or chimney used in connection with any stationary steam boiler, locomotive, or furnace of any description within the corporate limits of the city of Indianapolis, in any apartment house, office building, hotel, theater, place of public amusement, school building, institution, locomotive, or any other structure in the city of Indianapolis, or in any building used as a factory, or for any purpose of trade, or for any other purpose whatever, except as a private residence, shall be deemed and is hereby declared to be a public nuisance."

There was a judgment against appellant in the court below, and in this court his counsel urge the following objections to said ordinance : (1) That said section declares the emission of dense black or gray smoke a nuisance regardless of the question whether the smoke emitted does, or even can, in the particular locality, work injury, inconvenience, nuisance, or discomfort to anyone in the enjoyment of his reasonable rights of person and of property ; (2) that said ordinance is void because of the exemption of private residences ; (3) that the ordinance wherein said section is found relates to different subjects of legislation as they are classified in the act concerning cities. We shall consider these contentions in their order.

Both under the act of 1891 (Acts 1891, p. 137, §23, §3794 Burns 1901), which was in force when the ordinance was

1. passed, and the act of 1905 (Acts 1905, p. 219, §53, §3477 Burns 1905), the city was given the power "to declare what shall constitute a nuisance." At the time of the passage of both of said acts cities were prohibited from making an act punishable by ordinance which constituted an offense against the State. §1709 Burns 1901, §1640 R. S. 1881; §1719 Burns 1905, Acts 1905, p. 584, §62. In view of this restriction, it is very clear that it

was the purpose of the General Assembly to authorize cities to exercise a legislative power in the denouncement as public nuisances of some things which were not within the purview of the criminal legislation of the State, or, in other words, nuisances *per se*, for otherwise the grant of power would have been of no effect. While it is clear that cities are not authorized under such grant to condemn as a nuisance that which, from its evident character, condition and surroundings, is clearly not of such a nature, yet if that which is prohibited lies on the border line of a public nuisance, so as fairly to invoke the legislative judgment in the determination of the question as to whether the thing should be prohibited, we are of opinion that we should accord to such determination the same respect as would be due to a like conclusion, expressed in the form of law by the General Assembly. In *Miller* v. *Town of Syracuse* (1907), 168 Ind. 230, 8 L. R. A. (N. S.) 471, we said: "It would be manifestly difficult, if not impossible, to frame general laws dealing in detail with nuisances, and the legislature has wisely committed to the local government authority to enact, and the responsibility of enforcing, proper sanitary and health regulations. If there be any fear of oppression, that fear must be that the people invested with the right of self-government will oppress themselves, as the power is wholly in their hands. Courts should be reluctant to disturb a municipal regulation, enacted in pursuance of such a comprehensive grant of power, and designed to promote the public health and comfort, on the ground of unreasonableness, but such regulation should be upheld as valid unless it is plain that it has no real relation to its professed object, or is a palpable invasion of private rights protected by constitutional guaranties." In *Baumgartner* v. *Hasty* (1885), 100 Ind. 575, 50 Am. Rep. 830, this court quoted with approval the following language from *North Chicago City R. Co.* v. *Town of Lake View* (1883), 105 Ill. 207, 44 Am. Rep. 788: "In doubtful cases, where a thing may or

may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power like the one we are considering, their action, under such circumstances, would be conclusive of the question." It was said by the court in *Gregory* v. *Mayor, etc.* (1869), 40 N. Y. 273, 279, in passing upon certain regulations looking to the conservation of the health and comfort of the inhabitants of a city: "The importance of sustaining that board, in all lawful measures, tending to secure or promote the health of the city, should make us cautious in declaring any curtailment of their authority, except upon clear grounds. On the contrary, powers conferred for so greatly needed and most useful purposes, should receive a liberal construction for the advancement of the ends for which they were bestowed." And see *Fisher* v. *Harrisburg* (1854), 2 Grant 291; *Harrison* v. *Mayor, etc.* (1843), 1 Gill 264.

The question we have to deal with is not as to the authority to regulate the emission of dense smoke in a sparsely inhabited locality wherein the act could only result 3. in the creation of a private nuisance, but of the right to prevent the emission of dense black or dense gray smoke (for so we construe the ordinance) within the corporate limits of a populous city, wherein, if there be no regulation upon the subject, the smoke from scores of steamplants must, in the nature of things, often cover the city as with a pall, thereby impairing the health and comfort of thousands and casting grime upon every exposed object. If there is anything in the principle of the greatest good to the greatest number, or in the declared authority of government reasonably to regulate the use of property for the common good, it must be affirmed that power exists to deal with a condition which renders life in a great manufacturing city little short of impossible. In Mr. McQuillan's article, entitled "Abatement of the Smoke Nuisance in Large Cities,"

46 Cent. L. J. 147, it is said: "If there is one thing in populous cities in which there are numerous steam-plants, wherein are consumed large quantities of bituminous or soft coal for fuel, which is generally known and admitted to be a nuisance, it is what is commonly known as 'smoke nuisance.' It is a well-known fact that smoke is carried for long distances, and, mingling with the general cloud of smoke arising from the furnaces of an industrial and thickly populated community, this whole mass of smoke diffuses itself and thoroughly impregnates the atmosphere and hangs as a dark blanket over the city from which soot drops constantly which works its way into stores and dwellings and falls on the faces, hands and clothing of persons who may be on the streets or otherwise exposed to it, and which also injures certain kinds of property and business, and is a source of annoyance, discomfort and inconvenience, more or less, to all within the city. The annoyance and damage are greatly increased where the air is heavy and moist, as is generally the case in many localities. While some degree of smoke in the atmosphere, greater or less, according to the commercial character and size of the community, is an evil unavoidably connected with life in modern times, and especially with life in the great cities, where common soft coal is used for fuel in great quantities, yet the law does not hesitate to declare smoke a nuisance when it permeates the air in unreasonably dense volumes, or is, for any reason, so carelessly or unskillfully disposed of as to produce an interruption of the comfortable enjoyment of life or property. Dense smoke and the soot resulting therefrom have been regarded by the common law and equity anterior to the days of Blackstone, as detrimental to health and comfort, injurious to certain classes of property and business, consequently a nuisance. The books teem with cases where parties have been restrained from discharging or emitting dense or black smoke, and where damages have been awarded as a result of the smoke nuisance. 'The real question in

all cases is the question of fact, namely, whether the annoyance is such as to materially interfere with the ordinary comforts of human existence.' There can be no reasonable doubt as to the validity of legislation against such a nuisance on the part of the municipal corporation, where, as already stated, a general power is conferred in the charter or organic law to define or declare, prevent and abate nuisances.'' While it is possible that in some atmospheric conditions the emission of smoke from a particular stack, situated in the outskirts of a city, might not amount to a nuisance, yet it is scarcely conceivable that, with the general smoke of the city, it would not at all times operate to the discomfort of some persons, while with a sudden change of such conditions a large part of the people in the residential and business portions of the city might be annoyed thereby. These considerations make general restrictive regulations permissible, presenting, as they do, a case in which the discretion of the municipal legislature is invoked to determine whether, upon a consideration of the concrete. circumstances relative to the particular city, a general regulation is required. *Moses* v. *United States* (1900), 16 App. Cas., D. C., 428; *Glucose Refining Co.* v. *City of Chicago* (1905), 138 Fed. 209; *Harmon* v. *City of Chicago* (1884), 110 Ill. 400, 51 Am. Rep. 698; *Marshall Field Co.* v. *City of Chicago* (1892), 44 Ill. App. 410; *State* v. *Tower* (1904), 185 Mo. 79, 84 S. W. 10, 68 L. R. A. 402; *City of St. Paul* v. *Haugbro* (1904), 93 Minn. 59, 100 N. W. 470, 66 L. R. A. 441, 106 Am. St. 427; 46 Cent. L. J. 147. Counsel for appellant has referred us to *City of St. Louis* v. *Heitzeberg Pack., etc., Co.* (1897), 141 Mo. 375, 42 S. W. 954, 39 L. R. A. 551, 64 Am. St. 516, in support of his contention that the ordinance is void. The admissions of counsel for the city in that case, and the fact that the ordinance was broader than the one before us, may be regarded as in some degree taking from that case the force of an apposite prece-

dent, but in any event it has been much discredited by the later case of *State* v. *Tower, supra.*

There is nothing disclosed by the record in this case, and there is no fact within our judicial knowledge,. to warrant the conclusion that the city has not reasonably exercised the legislative power which has been delegated to it.    The ordinance does not prohibit the use of soft coal, but countenances such use, provided that dense black or dense gray smoke is not emitted.    The ordinance assumes that the emission of such smoke may be prevented, and the intendment must be in favor of the validity of this assumption.

We are further of opinion that the fact that the ordinance exempts private residences from its operation does not render the classification faulty.    The fact that
4.    the chimneys of residences emit much less smoke than comes from furnaces used in factories and *quasi*-public buildings, and the consideration that it was doubtless regarded as impracticable to install smoke consuming devices or to employ skilled firemen in most private houses, furnishes a sufficient basis for the classification. There are authorities directly in point on this proposition. *Moses* v. *United States, supra; People* v. *Louis* (1891), 86 Mich. 273, 49 N. W. 140; *State* v. *Tower, supra.*

In our opinion the third objection which appellant's counsel offers to the ordinance is not well taken.    It is true that in the act of 1905, concerning cities and towns (Acts
5.    1905, p. 219, §53, §3477 Burns 1905), the General Assembly saw fit to number each of the grants of power to cities to enact ordinances, and it may be conceded that a limitation whereby there could be but one general subject of legislation embraced in a single ordinance would often operate to prevent inconsiderate legislation, but since the General Assembly has not seen fit to declare such a rule of law, we are not impressed with the view that, as a court, we should declare such a rule simply because it appears to us that beneficient results would follow its estab-

lishment. So far as we are able to say, the legislature may have seen fit to number the grants merely as a matter of convenience. The fact that it was at the pains to make certain express provisions concerning the manner of enacting ordinances gives rise to a presumption that it has spoken its whole mind upon the subject. As a ruling upon a somewhat analogous question it may be mentioned that this court has refused to extend to ordinances the provision of the Constitution concerning the titles of statutes (*Green* v. *City of Indianapolis* [1865], 25 Ind. 490; *Baumgartner* v. *Hasty* [1885], 100 Ind. 575, 50 Am. Rep. 830), although such provision was directed at the very evil which counsel urge should be avoided. Practically the same question which is here raised was decided adversely to appellant's contention in *Garrett* v. *Janes* (1886), 65 Md. 260, 3 Atl. 597, wherein the court said: "That it is competent for a municipal legislature by a single ordinance to declare any compilation of ordinances or proposed ordinances in force, in the absence of a statutory prohibition, we do not doubt. Such a power has been too generally exercised, with implied if not express recognition by the courts to be now questioned."

Judgment affirmed.