## PEOPLE v. NEW YORK EDISON CO.

(Supreme Court, Appellate Division, First Department.   December 5, 1913.)

1. NUISANCE (§ 3*)—SMOKE.

While at common law smoke was not a public nuisance, equity has always granted relief from discomfiture resulting from dense smoke, as a private nuisance.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 4, 5, 9–25; Dec. Dig. § 3.*]

2. NUISANCE (§ 60*)—PUBLIC NUISANCE—STATUTORY REGULATION.

The Legislature may add to the common-law classification of nuisances and declare things public nuisances which were not such at common law.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 137; Dec. Dig. § 60.*]

3. HEALTH (§ 20*)—POLICE POWER—REGULATIONS—SANITARY CODE.

The Sanitary Code was enacted in the exercise of the state's police power, which extends to the reasonable restriction, as well as the regulation, of the use of private property, where, in the legislative judgment, the evil might injuriously affect the public health, comfort, and convenience.

[Ed. Note.—For other cases, see Health, Cent. Dig. § 24; Dec. Dig. § 20.*]

4. CONSTITUTIONAL LAW (§ 48*)—VALIDITY—PRESUMPTIONS.

A statute is presumed to be valid and to have been enacted after due investigation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

5. NUISANCE (§ 60*)—SMOKE LAWS—POLICE POWER.

Since the regulation of the discharge of smoke is within the police power, a statute doing so is not invalid unless it clearly shows that it unnecessarily and unreasonably interferes with private property and places an unreasonable burden on the owner considered in view of the public benefit.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 137; Dec. Dig. § 60.*]

6. CONSTITUTIONAL LAW (§ 48*)—STATUTES—PRESUMPTION OF CONSTITUTIONALITY.

Any doubt as to the constitutionality of a statute should be resolved in favor of its validity, and it should only be declared unconstitutional where it clearly violates the Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec Dig. § 48.*]

7. HEALTH (§ 20*)—HEALTH REGULATIONS—EFFECT.

An ordinance or health regulation established pursuant to statute has the same force as a statute.

[Ed. Note.—For other cases, see Health, Cent. Dig. § 24; Dec. Dig. § 20.*]

8. NUISANCE (§ 60*)—REGULATION—VALIDITY OF STATUTE.

In absence of evidence that it cannot be enforced without imposing an unreasonable burden upon property owners, it cannot be said that Sanitary Code, § 181, providing that no person shall permit dense smoke to be discharged from any building, engine, etc., and that persons violating the provisions shall be liable, as a police regulation, is invalid.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 137; Dec. Dig. § 60.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. NUISANCE (§ 60*)—REGULATION—CONSTRUCTION OF STATUTE.
    Sanitary Code, § 181, prohibiting any person from allowing dense smoke to be discharged from any building, engine, etc., is not applicable where the discharge of smoke is accidental or unavoidable, but prohibits a discharge of large volumes of smoke at intervals.
    [Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 137; Dec. Dig. § 60.*]

10. NUISANCE (§ 60*)—SMOKE LAWS—CONSTRUCTION.
    Sanitary Code, § 181, prohibiting one from permitting dense smoke to be discharged from any building, should be construed in the light of its purpose and of the authority under which it is enacted.
    [Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 137; Dec. Dig. § 60.*]

11. STATUTES (§ 47*)—INSTRUCTION—PENAL STATUTES.
    A penal law or ordinance should be sufficiently definite for those affected by it to know their duty thereunder, and, if not, it cannot be sustained on the assumption that officers will exercise a wise discretion in enforcing it.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 47; Dec. Dig. § 47.*]

12. NUISANCE (§ 60*)—SMOKE LAWS—PUBLIC NUISANCE—REGULATIONS.
    Sanitary Code, § 181, prohibiting any person from allowing any dense smoke to be discharged from any building, etc., and imposing a penalty for its, violation, may be upheld on the theory that the acts prohibited constitute a public nuisance, even though it does not expressly declare dense smoke to be a public nuisance.
    [Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 137; Dec. Dig. § 60.*]

Appeal from Court of Special Sessions of City of New York.

The New York Edison Company was charged with permitting dense smoke to be discharged from its building in violation of the Sanitary Code, and, from an order sustaining a demurrer to the information, the People appeal.    Reversed, and demurrer overruled.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William J. Millard, of New York City (Herman Stiefel and Terence Farley, both of New York City, and William E. C. Mayer, of Brooklyn, on the brief), for the People.

Charles I. Taylor, of New York City (Thomas H. Beardsley, of New York City, on the brief), for respondent.

LAUGHLIN, J.    The information charges that on the 4th day of April, 1913, the defendant, a domestic corporation, was in possession and had the management and control of the premises extending from Third avenue between Thirty-Eighth and Fortieth streets easterly to the East River, and of stationary engines, furnaces, and boilers which had been installed in the building on said premises and were used by defendant, and willfully violated said section 181 of the Sanitary Code—the provisions of which are set forth in the information in hæc verba—by causing suffering and allowing "dense smoke to be discharged from said" building, engine, and premises.    The demurrer was upon the grounds, among others, that the information did not state

facts sufficient to constitute a crime, and that the provisions of the Sanitary Code, upon which the prosecution is based, are unconstitutional and void; and that is the theory on which the demurrer was allowed.

The provisions of the Sanitary Code in question are as follows:

"Sec. 181. No person shall cause, suffer or allow dense smoke to be discharged from any building, vessel, stationary or locomotive engine or motor vehicle, place or premises within the city of New York, or upon the waters adjacent thereto, within the jurisdiction of said city. All persons participating in any violation of this provision, either as proprietors, owners; tenants, managers, superintendents, captains, engineers, firemen, or motor vehicle operators or otherwise, shall be severally liable therefor."

In deciding that the section quoted was unconstitutional, I am of opinion that the learned trial court placed an unduly narrow and literal construction on its provisions holding, in effect, that it forbids the discharge of smoke which would not injure property or affect the public health or comfort, and erroneously assumed to take judicial notice that there is no practicable fuel readily obtainable at a price reasonable, when compared with the public benefit from requiring its use, which, if used, would not cause the discharge of dense smoke, and that there is no practical smoke consumer or other devise by which the discharge of such smoke could be arrested, and that therefore these provisions unnecessarily and unreasonably restrict the use of private property, in violation of the constitutional rights of the owners thereof.

It may well be that the discharge of dense smoke, even in this metropolis, would not constitute such a menace to public health or comfort, or to property, as to sustain the prohibition thereof under general authority declared by the Legislature, or even under express specific authority, which would be equivalent to action by the Legislature itself, if that would either render it impossible to use private property for business purposes, otherwise lawful, or would unreasonably burden the owners of such property, in so conforming it and the use thereof as to prevent the discharge of such smoke, with expense wholly out of proportion to any possible public benefit. The question here is, however, whether it is competent for the court to assume on judicial notice that these consequences would follow compliance with this section of the Sanitary Code.

[1] At common law, smoke was neither included in the classification of public nuisances, nor was it embraced in the enumerated causes of such nuisances (Dillon on Mun. Corp. [5th Ed.] vol. 2, § 694); but courts of chancery and equity have always exercised jurisdiction to grant relief from unnecessary annoyance, discomfort, or injury caused by dense smoke, from which soot usually falls, on the ground that in such cases it constitutes a private nuisance (Bowers v. City of Indianapolis, 169 Ind. 105, 81 N. E. 1097, 13 Ann. Cas. 1198). Since the early development of the common law, conditions, with respect to the kinds and use of fuel, have so materially changed that its ancient doctrines on the subject now before the court have long since ceased to be adequate. Now fuel is used, not merely to generate heat, but to generate steam for its direct or indirect application for both heat and power purposes. The marvelous growth of our manufacturing and transpor-

tation industries, and the rapidly increasing urban population, congested in small areas, and the progress in scientific investigations with respect to conditions affecting health, have rendered it necessary in the interest of the public welfare to impose specific limitations and restraints upon the use of private property that were unknown to the common law.

[2] On this theory, it has been held that it is entirely competent for the state Legislatures, and for the Congress of the United States, legislating for the territories, to add to the common-law classification of nuisances, and to declare things to be public nuisances which were not such in fact as the term nuisance had been theretofore understood and applied by the courts (Moses v. U. S., 16 App. D. C. 428, 50 L. R. A. 532; Bowers v. City of Indianapolis, supra; State v. Tower, 185 Mo. 79, 84 S. W. 10, 68 L. R. A. 402; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; People v. Sturgis, 121 App. Div. 409, 106 N. Y. Supp. 61. See, also, City of St. Paul v. Gilfillan, 36 Minn. 298, 31 N. W. 49), and, without declaring premises in a certain condition to be public nuisances to require changes and alterations and to restrict and regulate their use in the interest of public health and comfort (Health Dept. v. Rector, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579).

[3] The Sanitary Code was enacted in the exercise of the police power of the state, which extends, not only to the regulation, but also to the reasonable restriction of the use of private property, when, in the judgment and discretion of the Legislature, where the evil which is the subject of the legislation might injuriously affect public health, comfort, and convenience, or of the local officials, to whom authority has been duly delegated, the public health, comfort, or convenience so require. Health Dept. v. Rector, supra; Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385. Dense smoke, discharged in a thickly populated city, was a proper subject for regulation and restriction under the police power. This was recognized by the Court of Appeals in City of Rochester v. Macauley Fien M. Co., 199 N. Y. 207, 92 N. E. 641, 32 L. R. A. (N. S.) 554, where the court say:

"The emission of smoke from a chimney when it includes dust, soot, and cinders to such an extent that it is rendered very dark or black must materially affect the purity of the atmosphere surrounding the place where it is so emitted. The pervading substances in the smoke necessarily darken its color in proportion with the amount thereof. As soon as the impelling force is removed, such substances obey the law of gravity and fall upon the adjoining property. In a city or closely populated community where persons and property cannot be removed from the effect of the disagreeable contamination, it not only pollutes the air that must be breathed, but it mars the appearance, destroys the cleanliness, and affects the value of the property within the circle upon which such substances from the smoke so fall. The extent of the injury is a matter to be established by evidence, to include all the facts and circumstances relating to it, although doubtless it is a matter of common knowledge of which the courts may take judicial notice that some injury must result from substance-laden smoke pervading the atmosphere in which persons and property necessarily remain. * * * There is a great difference in the smoke, dirt, and soot-producing qualities of fuel and in the furnaces where consumed and in the manner of stoking the fires, and as the careless and unrestrained use of some fuels tends to produce and discharge into the atmosphere, surrounding the places where such fuels are so care-

lessly used, dirt and soot-laden smoke that is disagreeable and injurious, the production and discharge of such smoke is a proper subject for reasonable police regulation."

[4, 5] Where, as here, the subject of the regulation or restriction appears to be within the police power, and concededly very broad authority to legislate has been delegated to the local officials, and the enactment not only bears some relation to the public health, comfort, and convenience, but manifestly was calculated to promote them, and appears to be appropriate to that end, and it cannot be said that it is in reality an arbitrary interference with private rights under the guise of protecting the public, it is presumed to be valid and to have been enacted after due investigation, by which the discharge of such smoke was found to be preventable, which, at least, rendered the enactment proper, if it did not disclose a necessity therefor, and it cannot be declared void, unless it is clear, or by evidence becomes clear beyond any reasonable doubt, that it was not authorized by the Legislature, or that it unnecessarily and unreasonably interferes with private property rights, and places an unreasonable burden, considered in the light of the benefit to the public, on the owner. Health Dept. v. Rector, supra; Bowers v. City of Indianapolis, supra; State v. Tower, supra; City of Rochester v. Macauley Fien M. Co., supra; Moses v. U. S., supra; People v. Orange Co. Road Construction Co., 175 N. Y. 84, 67 N. E. 129, 65 L. R. A. 33; Wright v. Hart, 182 N. Y. 334, 75 N. E. 404, 2 L. R. A. (N. S.) 338, 3 Ann. Cas. 263; People v. Gilson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465; People ex rel. Wineburg Adv. Co. v. Murphy, 195 N. Y. 126, 88 N. E. 17, 21 L. R. A. (N. S.) 735; Fifth Ave. Coach Co. v. City of N. Y., 194 N. Y. 19, 86 N. E. 824, 21 L. R. A. (N. S.) 744, 16 Ann. Cas. 695, affirmed 221 U. S. 467, 31 Sup. Ct. 709, 55 L. Ed. 815.

[6] The courts should rigidly adhere to the rule that any doubt with respect to the constitutionality of legislation should be resolved in favor of the people whose respresentatives enacted it, and should decline to enforce it only when convinced that its enactment was clearly in violation of some restriction or limitation on the lawmaking power found in the federal or state Constitutions. Prior to the enactment of this section of the Sanitary Code in its present form, it seems that there had been a somewhat similar provision aimed at the same evil; but in it there was no adjective qualifying the word "smoke," such as is found in the present section, making it clear that something more than mere smoke must be emitted before the law is violated and that removes one of the objections theretofore made to the validity of the prior law. Health Dept. v. Ebling Brewing Co., 38 Misc. Rep. 537, 78 N. Y. Supp. 13; People v. Horton, 41 Misc. Rep. 309, 84 N. Y. Supp. 942; People v. Sturgis, supra. The former law withstood all attacks, although to sustain it the court construed it as prohibiting only "clouds of black smoke" (People v. Horton, supra), and held that a limitation therein that the emission should be "to the detriment or annoyance of any person or persons not being" in the building or on the premises or vessel from which the smoke was discharged, showed that the prohibition was aimed at what would be constructively a public

nuisance, which might be prohibited. People v. Sturgis, supra. The court, also, in that case, referred to the decisions in other jurisdictions sustaining laws and ordinances prohibiting the discharge of dense smoke, without further qualification, and stated that such was not the effect of the law then under consideration.

No question has been raised with respect to the sufficiency of the authority delegated by the Legislature to justify the enactment or adoption of the section, unless it be in a suggestion that the section, in effect, declares such smoke to be a public nuisance, and that this was not authorized. The record does not disclose when section 181 of the Sanitary Code was adopted in its present form. The arguments of counsel have, however, proceeded on the assumption that it was enacted pursuant to the provisions of sections 43 and 1172 of the Greater New York Charter, as amended by chapter 466 of the Laws of 1901. Said section 43 is as follows:

"The board of aldermen shall have power to make, establish, alter, modify, amend and repeal all ordinances, rules, and police, health, park, fire and building regulations, not contrary to the laws of the state, or the United States, as they may deem necessary to carry into effect the powers conferred upon the city of New York by this act, or by any other law of the state, or by grant; and such as they may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, peace and prosperity of said city and its inhabitants, except so far as power is conferred by this act upon presidents of boroughs, the police, health, park, and fire departments respectively to make rules for the government of the persons employed in and by said departments. Nothing in this section contained shall be construed to impair the powers conferred by this act upon the department of education; and except so far as the legislative power respecting the health, police, park, fire and building departments shall be conferred upon said departments respectively by the provisions of this act, and except that any modification of the existing rules, regulations and ordinances affecting any of the departments and all ordinances to be passed to govern the board of public improvements or any of the departments thereof, must originate with the department concerned, or with said board, and must be adopted or rejected by the board of aldermen without amendment."

The provisions of this section with respect to the authority intended to be conferred on the board of aldermen to enact or approve ordinances affecting public health are not entirely clear; but, excepting in so far as authority was elsewhere by the charter conferred on the board of health, it is evident that the Legislature, by not attempting to define specifically the powers conferred by this broad general language, delegated extensive power to legislate. We are not informed what part either the board of aldermen or the board of health had in enacting the section in question. The argument appears to be that neither nor both could enact it. We may assume therefore that it was duly enacted if either or both bodies had authority. Section 1172, in effect, ratified the Sanitary Code in force January 1, 1902, and authorized and empowered the board of health from time to time to "add to and alter, amend or annul any part of the Sanitary Code, and may therein publish additional provisions for the security of life and health in the city of New York, and confer additional powers on the department of health, not inconsistent with the Constitution or laws of this state, and may provide for the enforcement of the said Sanitary

Code, by such fines, penalties, forfeitures or imprisonment as may by ordinance be prescribed. The board of health may embrace in said Sanitary Code all matters and subjects to which, and so far as, the power and authority of said department of health extends, not limiting their application to the subject of health only. Any violation of said Sanitary Code shall be treated and punished as a misdemeanor."

It thus quite plainly appears that the Legislature by the general language employed intended to delegate to the board of health full power and authority to legislate on the subject of public health and safety, and, in order that the authority might not be technically construed and strictly confined to health measures, it expressly provided that the power to legislate should extend to all matters over which the health department was given supervision, such as public safety and cleanliness. That it was intended to confer very broad and extensive authority is emphasized by the fact that it provided that violations of the Sanitary Code should be treated and prosecuted as misdemeanors, thus expressly delegating to the board of health authority to define and declare misdemeanors in matters affecting public health and comfort.

[7] An ordinance or health regulation, adopted pursuant to authority delegated by the Legislature, has the same force and effect as if enacted by the Legislature itself. City of Buffalo v. H. L. E. & W. R. R. Co., 152 N. Y. 276, 46 N. E. 496. The possible effect of such smoke on those affected with weak and unhealthy lungs, and who are obliged to live in overcrowded tenements, and for whose safety both the state and thousands of charitable people have been and are solicitous, as is shown by the establishment and maintenance of sanatoriums, is alone sufficient to indicate that this was a proper subject for legislative investigation and would warrant the enactment of appropriate regulations and restrictions of which the court may take judicial notice. Moreover, it is common knowledge, as shown by the authorities cited, that there would be great public discomfort and injury both to health and to property, if the unrestricted use of soft coal were permitted in a large city.

[8] I am of opinion, therefore, that it is perfectly clear that the court may not take judicial notice that this prohibition against the discharge of smoke is unreasonable and void; and that, if it may not take judicial notice to the contrary, it must, at least, until evidence impeaching the enactment, as by showing that it cannot be observed without extinguishing the fires in the furnaces to which it relates, or imposing upon the property owners an unreasonable burden, in comparison with the public benefit in obtaining other fuel or equipment is presented. Health Dept. v. Rector, supra; Moses v. U. S., supra; Bowen v. City of Indianapolis, supra; State v. Tower, supra. See, also, People v. Transit Dev. Co., 131 App. Div. 174, 115 N. Y. Supp. 297.

In Bowen v. City of Indianapolis, supra, where an ordinance forbidding the discharge of dense smoke was sustained, the court said:

"It is a well-known fact that smoke is carried for long distances, and, mingling with the general cloud of smoke arising from the furnaces of an

industrial and thickly populated community, this whole mass of smoke diffuses itself and thoroughly impregnates the atmosphere and hangs as a dark blanket over the city from which soot drops constantly, which works its way into stores and dwellings and falls on the faces, hands, and clothing of persons who may be on the streets or otherwise exposed to it, and which also injures certain kinds of property and business, and is a source of annoyance, discomfort, and inconvenience, more or less, to all within the city."

An act of the Legislature prohibiting the use of soft coal to a limited extent in Brooklyn has been sustained. City of Brooklyn v. Nassau Electric R. R. Co., 44 App. Div. 462, 61 N. Y. Supp. 33; City v. Johns-Mandeville Co., 89 App. Div. 449, 85 N. Y. Supp. 757.

The learned counsel for the respondent insists that the discharge of any dense smoke, of no matter what color or nature and even if accidentally or only momentarily, is prohibited by this section of the Sanitary Code. These provisions should not be construed literally, especially since that might render them void. The information charges that the violation was willful.

[9] Although that is not expressly embraced in the provision in question, yet, since a violation is deemed a misdemeanor, the section should not be construed as applicable where the discharge of the smoke is accidental or unavoidable.

[10] It is the spirit and intent of the law, rather than its letter, that governs, and therefore these provisions should be considered in the light of the purpose for which they were intended and of the authority under which they were enacted. Higgs v. Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819; People v. Sturgis, supra; Atlantic City v. France, 75 N. J. Law, 910, 70 Atl. 163, 18 L. R. A. (N. S.) 156. It is evident that the object of this enactment was the prevention of the discharge of smoke of such a character and in such quantities that it might injuriously affect the public health or comfort, or injure property, and the court would not be warranted in convicting for a violation of this section, excepting on evidence from which an inference to that effect might be drawn. I think that the application of this section was not intended to be limited to cases in which evidence is adduced embracing every element upon which a conviction as for maintaining a public nuisance might have been had at common law, or even under the Penal Law, and that it should not be so limited. The section should have a reasonable construction which would preclude a conviction for a mere accidental or occasional momentary discharge of dense smoke, but which would insure the prevention of a continuous discharge or a discharge at intervals of large volumes of smoke, such as is caused by the use of soft coal.

[11] I agree with the view expressed by the court in St. Louis v. Heitzeberg Packing Co., 141 Mo. 375, 42 S. W. 954, 39 L. R. A. 551, 64 Am. St. Rep. 516, that a penal law or ordinance should be sufficiently definite, so that those whose conduct it is intended to govern may know their duty, and that, if not, it should not be sustained on the theory that officials will exercise a wise discretion in enforcing it. But it is for the court and not for the prosecuting officer to decide in a given case whether this section has been violated, and there should

be no difficulty in so enforcing it as to suppress the smoke nuisances at which it was aimed without requiring actual proof of safety to the public health or to property.

In State v. Tower, supra, where a statute prohibiting "the emission or discharge into the open air of dense smoke within the corporate limits of cities" having a population of 100,000 was sustained as valid, the court said:

"The only remaining proposition is that the Legislature could not declare the emission of dense smoke into the open air of a city of 100,000 inhabitants a nuisance without qualifying it by adding to it that such smoke must injure the property in the neighborhood or affect the health or interfere with the comfort of the citizens of the neighborhood. We have already ruled that the Legislature, charged with the duty of guarding the public interests and vested with a wide discretion and liberty of choice, must be presumed to have inquired into and duly considered the effect, present and prospective, of the continual emission, constantly or at intervals, of dense smoke, upon those public interests in respect to safety, comfort, and cleanliness." The power to declare what is and what shall be a public nuisance is clearly a legislative one, and the act in question is clearly an exercise of the police power, and "there is nothing in the act which smacks of oppression, but on the contrary it accords with the universal experience that dense smoke, emitted in a large, populous, and crowded city is a nuisance, though it may not have been previously so held at common law or so declared by statute."

In Harman v. City of Chicago, 110 Ill. 400, 51 Am. Rep. 698, where the same points as are now presented were urged against the validity of an ordinance prohibiting the discharge of "dense smoke," the court in construing and sustaining the ordinance said:

"Nor will any subtle distinction be indulged as to what is meant by 'dense smoke,' as those terms are used in the ordinance. The terms used will be understood as commonly employed, and the court will understand by 'dense smoke' precisely what everybody else does that has ever seen a volume of dark, dense smoke as it comes from the smokestack or chimney where common soft or bituminous coal is used for fuel in any considerable quantities. * * * It is but stating what is a matter of common observation, that 'dense smoke' is caused by the kind of fuel used in furnaces and fire boxes."

These views were quoted with approval in City of St. Paul v. Haugbro, 93 Minn. 59, 100 N. W. 470, 66 L. R. A. 441, 106 Am. St. Rep. 427, 2 Ann. Cas. 580. In St. Louis v. Heitzeberg Packing Co., 141 Mo. 375, 42 S. W. 954, 39 L. R. A. 551, 64 Am. St. Rep. 516, an ordinance declaring the discharge of "dense smoke" a public nuisance was declared void on the ground that authority to enact it had not been delegated by the Legislature, and stress was laid on the fact that the city depended largely on bituminous coal in the vicinity, as showing the unreasonableness of the ordinance; but in that case it was conceded of record that such emission of smoke could not be prevented by any known device; and the same court later (State v. Tower, supra) sustained a statute in the same language prohibiting the emission of smoke. In the latter case, the court observed that the evidence showed that the escape of such smoke was preventable, but apparently recognized that without an express provision to that effect it might be shown in defense that it could not be prevented. The court in that case also assumed, without discussing it, that "dense smoke" meant thick and opaque.

[12] If, however, what it was intended to prohibit by this section would constitute a public nuisance, or if it must be limited to cases of that kind in order to sustain it, still it could be upheld even on that theory. It is of no importance that it does not declare dense smoke to be a public nuisance. Harmon v. City of Chicago, supra, at page 412 of 110 Ill., 51 Am. Rep. 698. Pursuant to authority duly delegated the acts have been forbidden, and the Legislature itself has declared the offense to be a misdemeanor. That is quite sufficient. If the section should be construed as applying only to such emissions of smoke as would constitute a public nuisance, as the Supreme Court of Minnesota construed a statute phrased in the same terms, it would still be valid, for a prohibition against the emission of "dense smoke" may be construed as forbidding the discharge of smoke of such character and in such volume as to constitute a public nuisance, which it has frequently of late been declared to be. City of St. Paul v. Haugbro, supra; Harmon v. City of Chicago, supra; Bowers v. City of Indianapolis, supra; Moses v. U. S., supra; Atlantic City v. France, 75 N. J. Law, 910, 70 Atl. 163, 18 L. R. A. (N. S.) 156; Glucose Refining Co. v. City of Chicago, 138 Fed. 309. See, also, Cadwell v. Pray, 86 Mich. 273, 49 N. W. 150. In Atlantic City v. France, supra, an ordinance enacted under authority such as the general welfare clause of municipal charters prohibited the emission from smokestacks of furnaces of "dense smoke," which contained soot in sufficient quantity to permit the deposit of such soot on the surface within the city, was sustained, but only on the theory that it was not to be construed literally, but should be limited "to smoke of such character as invades the rights of persons and property, or affects injuriously the public health."

That there has been widespread progressive public agitation for the suppression of smoke nuisances is shown by the fact that in at least three states the Legislature itself has declared dense smoke to be a public nuisance per se, or it was so declared under authority clearly delegated by the Legislature, after ordinances to the same effect had been declared void, as unauthorized; and the later legislation was in every instance sustained by the court of final review. St. Louis v. Heitzeberg Packing Co., supra; State v. Tower, supra; City of St. Paul v. Gilfillan, supra; City of St. Paul v. Haugbro, supra; State ex rel. v. Indianapolis Union R. Co., 160 Ind. 45, 66 N. E. 163, 60 L. R. A. 831; and Bowers v. City of Indianapolis, supra.

It follows that the order should be reversed, and demurrer disallowed, with leave to withdraw the same and plead over.

McLAUGHLIN, CLARKE and SCOTT, JJ., concur. INGRAHAM, P. J., concurs in result.