## ARTHUR W. SORENSON
### vs.
## CITY OF NEW HAVEN, ET AL.

Superior Court    New Haven County    File #50698

Present: Hon. NEWELL JENNINGS, Judge.

Alexander Winnick,    Attorney for the Plaintiff.

The Corporation Counsel,    Attorney for the Defendant.

**MEMORANDUM FILED DECEMBER 31, 1936.**

JENNINGS, J.  The following facts are found:

1.  The plaintiff is a producer of and dealer in milk and cream.  His farm is in Woodbridge and he sells his product in New Haven and neighboring towns.  His farm and milk route represent a considerable investment.

2.  The plaintiff has complied with all of the numerous regulations of the State and local authorities except the regu' lation in question.  His dairy has been frequently inspected and is in particularly fine condition.  His milk has met every test.

3.  He sells about 400 quarts of raw milk in New Haven daily and about 300 quarts of pasteurized milk.  He can pasteurize his entire output in his existing plant.

4.  About 96% of the milk consumed in New Haven is pasteurized.

5.  Raw milk may be detrimental to public health.

6.  All outbreaks of milk borne diseases in this State since 1923 have been traced to raw milk.  Some of these diseases are septic sore throat, typhoid and undulent fever, dysentery, tuberculosis.  There has recently been a marked increase in the cases of undulent fever in this State.

7.  The Board of Health Commissioners of New Haven have adopted a regulation of which the following is a copy:

## BOARD OF HEALTH REGULATION CONCERNING PASTEURIZATION OF MILK

On and after January 1, 1937, all milk or cream brought into or produced in the City of New Haven, for sale within the City of New Haven must be pasteurized and—or from

accredited certified herds.

The terms "pasteurization," "pasteurized," and similar terms shall be taken to refer to the process of heating every particle of milk or milk products to a temperature of not less than 142 degrees F., and holding at such temperature for not less than 30 minutes in approved pasteurization apparatus, provided that approval shall be limited to apparatus which requires a combined holder and indicating thermometer temperature tolerance of not more than $1\frac{1}{2}$ degrees F., as shown by official tests with suitable testing equipment, and provided that such apparatus shall be properly operated and that the indicating thermometers and the recording thermometer charts both indicate a temperature of not less than $143\frac{1}{2}$ degrees F., continuously throughout the holding period. The terms, "pasteurization," "pasteurized," and similar terms shall also include the process of heating every particle of milk or milk products to 160 degrees F., and holding at that temperature or above for not less than 15 seconds in apparatus of approved design and properly operated. Provided that nothing contained in this definition shall be construed as disbarring any other process which has been demonstrated as of at least equal efficiency and is approved by the State health authority.

Certified milk is milk which conforms with the requirements of the American Association of Medical Milk Commissions in force at the time of production and is produced under certificate granted by the Connecticut Milk Regulation Board and produced according to its specifications for certified milk or cream.

Every person, firm or corporation violating this regulation shall be fined not more than fifty dollars ($50.00).

JOSEPH I. LINDE, M.D.
Health Officer.

New Haven, Connecticut,
May 26, 1936.

Approved as to form.

(Signed)   VINCENT P. DOOLEY,
Assistant Corporation Counsel.

June 1, 1936.
Attest:

ABRAHAM ZWEIGBAUM,
City Clerk.

8. This regulation was published in accordance with the charter requirements.

The plaintiff claims (1) that the Board of Health Commissioners had no power to pass the regulation, (2) that it was illegally adopted, (3) that it is void for uncertainty, and (4) that it takes the plaintiff's property without due process of law.

Taking up the last point first, our own case of **Shelton vs. City of Shelton, 111 Conn.** 433, disposes of it contrary to the claims of the plaintiff in the following language (page 436):

"Milk is in universal use as a food. It is peculiarly liable to contamination and adulteration. Therefore in the interest of public health and safety the regulation of its production, marketing and sale are held to be within the proper exercise of the police power of the State. This the State may effectuate directly by its statute, or it may delegate its regulatory power to an official board or officer, or to a municipality. It may exercise this power directly and completely, or it may delegate it directly or completely to either of these agencies, or it may act in the exercise of this regulatory power in concurrence with the municipality. The State may determine the standard of quality, prohibit the production, sale or distribution of milk not within the standard, divide it into classes, and regulate the manner of their use, so long as these standards, classes and regulatory provisions be neither unreasonable nor oppressive. The many recorded instances in which the courts have sustained this power of regulation bear witness to the liberality of their viewpoint where the public health and safety are concerned. If there be room for a reasonable difference of view as to the legislative prohibition, classification or regulatory provisions, courts will accept the legislative determination and not impose their own will.

"It must be conceded that the General Assembly has by granting in Section 66 of the defendant's charter the right to it 'to license milk dealers and regulate the sale and manner of distribution of milk and to prohibit the sale thereof,' delegated to it a certain measure of its police power. Neither can it be denied that in many statutes the General Assembly has exercised its power of regulation of the production, sale and distribution of milk."

This citation establishes the power of the legislature to

delegate its authority to a municipality in a matter of this kind. This delegation was made by section 173 of the city charter page 78 of the revision of 1928. This provides in part "Said board may, from time to time, make such by-laws, rules, regulations and orders as in its judgment the preservation of the public health shall require, to be enforced in the same manner as city ordinances . . . ." By the same section the board is given power "to regulate the sale of milk by licensing for a reasonable fee the vendors of the same . . ." It follows that if this regulation is not in conflict with the general statutes, it is valid as far as the power of the board to pass it is concerned.

The plaintiff claims that the Shelton case **supra** governs this case but the defendant points out a significant distinction between the two cases. In the Shelton case it was stipulated that the raw milk in question was "not detrimental to public health in any way". The statute, as it then read, restricted the power of municipalities to the regulation which is detrimental to public health. The majority of the court therefore held that milk which was not detrimental to public health was not the subject of regulation by the local health authority.

In 1929, after the passage of the Shelton ordinance, the phraseology of the statute was changed from "is detrimental" to "may be detrimental". By reference to finding 5 **supra** the importance of this change will be manifest.

My conclusion is that since raw milk may be detrimental to public health and since the statute gives the local health authority the power to regulate milk which may be detrimental to public health, point one follows point four into the discard. A regulation of the board of health having by virtue of charter provision the force of a city ordinance seems to me to be sufficiently the act of the city to bring it within the statutory provision.

Point two to the effect that the regulation was illegally adopted is not well taken. The board followed the requirements of the charter in regard to publication and that was sufficient.

My greatest difficulty has arisen from the phraseology of the regulation. A penalty for its violation is attached and the producer-dealer should be able to understand the regula-

tion. **U.S. vs. Reese, 92 U.S. 214, 220; People vs. N. Y. Edison Co., 144 N.Y.S. 707.** The "and/or" phrase has no place in a penal statute. The term "accredited certified herds" is not defined. Certified milk must meet two varying standards, that of the American Association of Medical Milk Commissioners and that of the Milk Regulation board.

While the last point is decisive of the case, the question is an important one and has been discussed at some length with a view to assisting the parties to a correct solution.

The plaintiff may have judgment declaring the regulation void for uncertainty and restraining the defendants from its enforcement.