BOARD OF HEALTH OF THE TOWNSHIP OF WEEHAWKEN, IN THE COUNTY OF HUDSON, PLAINTIFF-RESPONDENT, v. NEW YORK CENTRAL RAILROAD COMPANY, DEFENDANT-APPELLANT.

BOARD OF HEALTH OF THE TOWNSHIP OF WEEHAWKEN, IN THE COUNTY OF HUDSON, PLAINTIFF-RESPONDENT, v. JOHN W. COONS, DEFENDANT-APPELLANT.

Argued February 27, 1950—Decided March 27, 1950.

296

*Mr. Joseph A. Davis* argued the cause for appellants. *Messrs. O'Mara, Conway & Schumann,* attorneys.

*Mr. Harold Kolovsky* argued the cause for respondent. *Mr. John N. Platoff,* attorney.

The opinion of the court was delivered by

HEHER, J. The defendants New York Central Railroad Company and Coons appealed to the Appellate Division of the Superior Court from judgments of conviction entered in the Municipal Court of Weehawken upon complaints severally charging them with permitting or causing the emission of smoke from Central's power plant on Pershing Road, Weehawken, on October 8, 1949, between 8:30 P. M. and 9:30 P. M., "of a density greater than the density described as No. 2 on the Ringelmann Chart published by the United States Bureau of Mines," in contravention of an ordinance of the local Board of Health which embodied at length the standards of that bureau. Coons was Central's stationary engineer at the plant. The Appellate Division ordered the consolidation of the appeals for argument. Thereafter, we certified the appeals here on our own motion; and since there was uncertainty at the bar as to the right of appeal in cases of this class directly to the Appellate Division until the later determination of this Court in *State v. Yaccarino,* 3 *N. J.* 291 (1949), and the issues raised are of public concern, we granted defendants' motion on the oral argument for certification of the causes for appeal to the Municipal Court. *Constitution of 1947, Article VI, Section V, paragraph* 1 (d) ; *Rule* 1 :2–1 of this Court.

Section 2 of the ordinance denounces as a public nuisance the emission within the municipality of smoke of the proscribed density; and the insistence is that under *Pennsylvania Railroad Co. v. Jersey City,* 84 *N. J. L.* 716 (*E. & A.* 1913), and *Jersey City v. Erie Railroad Co.,* 84 *N. J. L.* 761 (*E. & A.* 1913), such a direction against a railroad company is *ultra*

*vires* and void. The *ratio decidendi* of these cases is that the non-negligent emission of smoke from the smokestacks of locomotives used in the operation of a railroad is an irremediable incident of the exercise of the legislative franchise, and not within local control except as expressly provided. But it is said that the principle is by analogy applicable to a railroad power plant as a necessary operating facility. We do not perceive the analogy.

■ Quite different considerations govern the use of locomotives in the operation of a railroad through the State and the management of a local power plant such as we have here. It is beyond the local province to proscribe smoke in the operation of locomotives under a railroad charter, unless its escape be attributable to negligence or want of care. There cannot be in the nature of things a delegation of regulative power which in its varying local applications would render function under the State's charter impracticable. *State v. Erie Railroad Co.*, 84 *N. J. L.* 661 (*E. & A.* 1913). The principle has no bearing upon the functioning of terminal facilities and fixed installations, such as engine houses and repair shops. *Beseman v. Pennsylvania Railroad Co.*, 50 *N. J. L.* 235 (*Sup. Ct.* 1888); affirmed, 52 *N. J. L.* 221 (*E. & A.* 1889); *Ridge v. Pennsylvania Railroad Co.*, 58 *N. J. Eq.* 172 (*Ch.* 1899); *B. & P. R. R. Co. v. Fifth Baptist Church*, 108 *U. S.* 317, 27 *L. Ed.* 739 (1883).

■ The ordinance here does not offend against the cited principle. It is designed to "regulate and control air pollution," in the interest of "the public health and welfare," by barring the "excessive emission of dense smoke" within the confines of the Township. "Dense smoke," within the intendment of the regulation, is that which has "a density of No. 2 or greater as established by the Ringelmann Chart" therein incorporated. This proscription is indubitably within the competency of the local boards of health. The function of these agencies is to advance and secure the public health by means and measures reasonably appropriate to that end. The preservation of the public health is a vital element of the police power inherent in sovereignty.

 The power thus exercised is within the grant contained in *R. S.* 26:3–64 and ch. 177 of the Session Laws of 1947, to be found also in *N. J. S. A.* 26:1A–9. The inherent general authority to conserve and protect the public health thereby conferred and recognized is not curtailed by the specific enumeration of *R. S.* 26:3–31. *Atlantic City v. Abbott,* 73 *N. J. L.* 281 (*Sup. Ct.* 1906); *Schwarz Bros. Co. v. Board of Health,* 83 *N. J. L.* 81 (*Sup. Ct.* 1912); affirmed on this point, 84 *N. J. L.* 735 (*E. & A.* 1913); *Fenton v. Atlantic City,* 90 *N. J. L.* 403 (*Sup. Ct.* 1917); *Kurinsky v. Board of Health of Lakewood Township,* 128 *N. J. L.* 185 (*Sup. Ct.* 1942); *Potter v. Weleck,* 131 *N. J. L.* 155 (*Sup. Ct.* 1944). The cited act of 1947 is affirmative legislative acquiescence in the judicial finding of the general power in the pre-existing statutes.

 And there can be no doubt that the regulation under review has a substantial relation to the public health. Dense smoke, a carrier as it is of dust, soot and cinders, contaminates and pollutes the atmosphere and deteriorates its normal healthful attributes and qualities, and therefore cannot but be harmful to the public health, especially in populous areas. This is a matter of common experience, so much so that it is properly a subject of judicial notice. *Rochester v. Macauley-Fien Milling Co.,* 199 *N. Y.* 207, 92 *N. E.* 641 (1910); *Bowers v. City of Indianapolis,* 169 *Ind.* 105, 81 *N. E.* 1097 (1907). In *Garrett v. State,* 49 *N. J. L.* 94 (*Sup. Ct.* 1886), it was indicated that the corruption of the air by noisome odors and smells, to the annoyance and inconvenience of the public, would constitute a public nuisance suppressible by the local board of health. It was said that the local boards of health were created "to prevent nuisances in conservation of the public health," and "to prevent disease and discomfort, such as might arise from contamination of air, water or food." See, also, *Nicoulin v. Lowery,* 49 *N. J. L.* 391 (*Sup. Ct.* 1887). At common law, an action of nuisance will lie for substantial discomfort or inconvenience. But the inconvenience must be more than fanciful; it is not actionable unless it is one "materially interfering with the ordinary comfort

physically of human existence, not merely according to elegant or dainty modes and habits of living, but according to plain and sober and simple notions among the English people." *Walter v. Selfe* (1851), 4 *DeG. & Sm.* 322. The common law judges by no Spartan standards. The loss of even one night's sleep is not deemed a trivial matter. *Andreae v. Selfridge* (1937), 3 *A. E. R.* 261; *Salmond on the Law of Torts* (10th Ed. 1945) 224. Of course, the standard of convenience and comfort varies according to local conditions and needs. It suffices to say as to this that the conditions constituting a nuisance at a given time and place may not be a nuisance at another time and place. And it may be added that the complexities of our modern society due in large part to congestion of population and concentration of industry and business impose an ever increasing demand for individual concessions to the common good. There are no constitutional restraints upon state action against the emission of dense smoke injurious to the common welfare; the only requirement is that the regulation be free from arbitrariness. *Northwestern Laundry v. DeMoines, 239 U. S. 486, 36 S. Ct. 206, 60 L. Ed. 396* (1916).

██ ██ It is also urged that if *R. S.* 26:3–64 be deemed a grant of the power here exercised, it is violative of Article IV, Section I, paragraph 1 of the State Constitution of 1947, for failure to prescribe "standards to guide the administrative agencies in the exercise of the powers delegated"—citing *Van Riper v. Traffic Telephone Workers' Federation of N. J., 2 N. J. 335, 353* (1949).

The local boards of health in the exertion of the authority thus conferred exercise, not an administrative function, but rather a portion of the police power to serve the public health. They are "governmental agencies by which the police law of the state is locally exerted." *Fredericks v. Board of Health, 82 N. J. L. 200 (Sup. Ct. 1912).* See, also, *Bradshaw v. City Council of Camden, 39 N. J. L. 416 (Sup. Ct. 1877)*; *State Board of Health v. Schwarz Bros. Co., 84 N. J. L. 500 (Sup. Ct. 1913)*; affirmed *sub nom. Schwarz Bros. Co. v. State Board of Health, Id. 735 (E. & A. 1913).* There is a delega-

tion to these agencies of the "law-making function * * * as an admitted exception to the general doctrine of constitutional legislation." *Bohan v. Weehawken*, 65 *N. J. L.* 490 (*Sup. Ct.* 1900). See, also, *Fenton v. Atlantic City, supra* (90 *N. J. L.* 403); *Borden's Milk Co. v. Board of Health*, 81 *N. J. L.* 218 (*Sup. Ct.* 1911); *Courter v. Newark*, 54 *N. J. L.* 325 (*Sup. Ct.* 1892); *Earruso v. Board of Health*, 120 *N. J. L.* 463 (*Sup. Ct.* 1938).

And, by the same reasoning, it would seem that in this regard there is no merit in the contention that *R. S.* 26:3-45 contravenes Article III of the Constitution of 1947, providing for a division of the powers of government. It is said that the power to declare and define nuisances is in essence judicial, and that such declaration as to the "emission of dense smoke, even for ten seconds, in anticipation of the event," constitutes an invasion of the judicial province. But there is no need to consider the section in its entirety. It suffices to say that the authority exercised here is legislative in quality. As to this, see *State, Marshall, Pros., v. Street Commissioners of Trenton*, 36 *N. J. L.* 283 (*Sup. Ct.* 1873).

The reasonableness of the regulation is not open to question. It does not proscribe all smoke, no matter what the conditions, but merely smoke of a density found deleterious to the public health. Indeed, it is urged that the enforcement of the regulation against defendants was arbitrary and unreasonable because the smoke was the result of the temporary use of high volatile coal made unavoidable by a miners' strike or work stoppage at the time which "prevented shipment of freshly mined, medium volatile coal to Weehawken." But unavoidable necessity was not established by the proofs.

It is said, also, that the exemption of one- and two-family residences from the mandate of the ordinance is arbitrary and the regulation constitutes a denial of the equal protection of the laws within the meaning of the Fourteenth Amendment of the Federal Constitution.

There are manifest differences of circumstance and degree between power plants such as Central's and private

residences in relation to the prevention and ·correction of the injurious consequences of dense smoke to the public health. The exigency and the remedy were peculiarly within the judgment of the local legislative body; and unless there be an utter lack of basis for the classification, the action taken is not discriminatory in the constitutional sense. *Ring v. North Arlington,* 136 *N. J. L.* 494 (*Sup. Ct.* 1948); affirmed, 1 *N. J.* 24 (1948); *Amodio v. West New York,* 133 *N. J. L.* 220 (*Sup. Ct.* 1945). The Legislature may make distinctions of degree having a rational basis; and they will be presumed to rest on that basis if there be any conceivable state of facts which would afford reasonable ground for its action. *Washington National Insurance Co. v. Board of Review of U. C. C.,* 1 *N. J.* 545 (1948). The legislative authority "is not bound to extend its regulation to all cases which it might possibly reach. The Legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' " *West Coast Hotel Co. v. Parrish,* 300 *U. S.* 379, 57 *S. Ct.* 578, 81 *L. Ed.* 703 (1937).

 And the proofs support the convictions. There was evidence of the emission during the period specified in the complaints of smoke of a density greater than that permitted by the ordinance, according to the standard of the Ringelmann Chart; and it stood uncontradicted. One witness characterized it as "dense black smoke;" another as "heavy black smoke." There was no attempt at refutation. As we have seen, the defense really was that the medium volatile coal ordinarily used was not obtainable; but it was not sustained.

We find no prejudicial error in the rulings on evidence.

The judgments are affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For reversal*—None.